## Commonwealth ex rel. Kelley *v.* Clark et al., Appellants.

182

Argued June 8, 1937.   Before Kephart, C. J., Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

*Joseph Sharfsin,* City Solicitor, with him *Abraham Wernick* and *Ernest Lowengrund,* Assistant City Solicitors, for appellants.

*Wm. A. Schnader,* of *Schnader & Lewis,* with him *Gilbert W. Oswald,* for appellee.

OPINION BY MR. JUSTICE DREW, July 7, 1937:

Under section 5 of Article XIX of the Act of June 25, 1919, P. L. 581, as amended by the Act of April 13, 1927, P. L. 203, the Civil Service Commission of the City of Philadelphia consisted of three commissioners elected by the city council for a term of four years. By virtue of the authority vested in it by the statute the city council elected three commissioners on January 6, 1936, to serve for the statutory period.

On March 30, 1937, the Governor approved Act No. 41 of the General Assembly of 1937, P. L. 158.[1]

---

[1] The act is as follows:

"An Act to amend section five A of article nineteen of the act, approved the twenty-fifth day of June, one thousand nine hundred and nineteen (Pamphlet Laws, five hundred eighty-one), entitled 'An act for the better government of cities of the first class of this Commonwealth,' as amended, by changing the number and method of appointment of the civil service commissioners in said cities.

"Section 1. Be it enacted, &c., That section five A of article nineteen of the act, approved the twenty-fifth day of June, one thousand nine hundred and nineteen (Pamphlet Laws, five hundred eighty-one) entitled 'An act for the better government of cities of the first class of this Commonwealth,' as amended, by the act, approved the thirteenth day of April, one thousand nine hundred and twenty-seven (Pamphlet Laws, two hundred three), is hereby further amended to read as follows:

"Section 5-A. There shall be established and constituted in such [city] *cities* a civil service commission consisting of [three] *five* civil service commissioners [who shall be elected by the city council by a majority vote of all the members elected thereto] *two of whom shall be appointed by the mayor of such cities, and two of whom shall be appointed by the city controller of such cities, and the four commissioners so appointed shall elect a fifth commissioner within thirty days after their appointment,* and shall hold office for a term of four years and until their successors are severally [elected] *appointed* and qualified. Vacancies in the office of civil service commissioner shall, in like manner, be filled for the remainder of the term *by the appointing power which appointed the person whose vacancy is to be filled.* The commissioners shall elect from among their own number a president and secretary. Each

By April 5, 1937, the mayor and the city controller, in pursuance of the act, had each appointed two commissioners and the latter in turn had selected a fifth commissioner. The present proceeding in quo warranto was then instituted to determine the legal rights of the new commissioners to their offices. On May 18, 1937, the court below filed an opinion in which it declared the act to be unconstitutional and void; judgment of ouster was entered, and an injunction was issued restraining defendants from interfering with the members of the commission as previously constituted. An appeal was immediately taken to this court, and on the following day, May 19, 1937, we refused appellants' application for a supersedeas. On the same day the Act of May 19, 1937, P. L. 722, was approved by the Governor.[2]

---

commissioner shall qualify by filing with the mayor an oath to perform the duties of his office faithfully and without fear or favor.

"Section 2. This act shall become effective immediately upon its final enactment."

[2] That act reads as follows:

"An Act to amend section one of an act, approved the thirtieth day of March, one thousand nine hundred and thirty-seven (Number forty-one), entitled 'An act to amend section five A of article nineteen of the act, approved the twenty-fifth day of June, one thousand nine hundred and nineteen (Pamphlet Laws, five hundred eighty-one), entitled "An Act for the better government of cities of the first class of this Commonwealth," as amended, by changing the number and method of appointment of the civil service commissioners in said cities,' abolishing the civil service commission as constituted and provided for by section five A of article nineteen of the said act, approved the twenty-fifth day of June, one thousand nine hundred and nineteen, as amended by the act, approved the thirteenth day of April, one thousand nine hundred and twenty-seven (Pamphlet Laws, five hundred three).

"Section 1. Be it enacted, &c., That section one of the act, approved the thirtieth day of March, one thousand nine hundred and thirty-seven (Number forty-one), entitled 'An act to amend section five A of article nineteen of the act, approved the twenty-fifth day of June, one thousand nine hundred and nineteen (Pamphlet Laws, five hundred eighty-one), entitled "An act for the better government of cities of the first class of this Commonwealth," as amended, by changing the number and method of appointment of the civil

By agreement of counsel, and with our approval, the record was amended in this court to include within the scope of the appeal the question of the constitutionality of the later act. Being but an amendment, that act must be treated as if written into the Act of March 30, 1937, supra, for the purpose of determining the effect of both: *Com. v. Barrett*, 304 Pa. 13; cf. *West v. Lysle*, 302 Pa. 147.

The legislation under review is attacked as violative of Article III, section 13, of the Constitution, providing that "No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." It is further urged to be in conflict with Article VI, section 4, providing that ". . . Appointed officers . . . may be removed at the pleasure of the power by which they shall have been ap-

---

service commissioners in said cities,' be, and the same is hereby, amended to read as follows:

"Section 5-A. There shall be established and constituted in such cities a civil service commission, consisting of five civil service commissioners, two of whom shall be appointed by the mayor of such cities, and two of whom shall be appointed by the city controller of such cities, and the four commissioners so appointed shall elect a fifth commissioner within thirty days after their appointment, and *they* shall hold office for a term of four years and until their successors are severally appointed and qualified. Vacancies in the office of civil service commissioner shall, in like manner, be filled for the remainder of the term by the appointing power which appointed the person whose vacancy is to be filled. The commissioners shall elect from among their own number a president and secretary. Each commissioner shall qualify by filing with the mayor an oath to perform the duties of his office faithfully and without fear or favor. *The civil service commission existing prior to the thirtieth day of March, one thousand nine hundred and thirty-seven, as constituted and provided for by section five A of article nineteen of the said act, approved the twenty-fifth day of June, one thousand nine hundred and nineteen, as amended by said act, approved the thirteenth day of April, one thousand nine hundred and twenty-seven, be, and the same is hereby abolished.*

"Section 2. This act shall take effect immediately upon its final enactment."

pointed. . . ." The Act of March 30, 1937, supra, is also said to be unconstitutional because of a defective title, in violation of Article III, section 3: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

The court below had before it only the Act of March 30, 1937, supra, which it found to be violative of Article III, section 3, in that it failed "to give notice that the Act is intended to remove the duly elected civil service commissioners in office upon the effective date of the Act." Having concluded that the act was intended to remove the incumbent commissioners, the court was of opinion that it was also unconstitutional under Article VI, section 4, "as the incumbents at the time of the passage of the Act of 1937 were not removed either by the express words of the Act or by the power by which they were appointed," and in conflict with Article III, section 13, "as 'diminishing' the salaries of the said commissioners after their election or appointment."

It is our duty to determine the intention of the legislature in the passage of the Acts of March 30 and May 19, 1937, and, if possible, make it effective. The acts considered together, as they must be, make it plain that the intention was to oust the commissioners elected by the city council and put in their places commissioners appointed by the mayor, the controller, and their appointees. There was no intention to abolish the office; language in the Act of May 19, 1937, supra, that it is abolished is mere subterfuge. The intention to the contrary is too obvious. The best that can be said is that the legislature attempted to abolish and continue the office at one and the same time, an impossible thing. Such a device cannot succeed, and while the question is a new one for this court, various other courts have so declared. *State ex rel. v. Baldwin,* 45 Conn. 134, is very similar to the instant case. It involved the validity of a statute which, at one and the same time, purported to

abolish the board of county commissioners of New Haven County and to create a new board, to be appointed by the legislature. The statute was held invalid, the court saying, at pages 142 ff: "If the law under which the relators were appointed was in fact repealed and the office actually abolished, then the relators could not successfully claim that they were county commissioners, for, as we have already seen, the legislature may repeal any law, with the exception before stated [not here relevant], passed by its predecessors, and may abolish any office created by legislative enactment. But has the legislature by the passage of this act accomplished either of the above results?

. . . . . . . . . . .

We have then this condition of things—an act of the legislature repeals by its terms a certain section of the General Statutes and abolishes a board of officers appointed under it, and the same act creates precisely the same board and clothes them with the same powers and duties enumerated in the section repealed. Can this be done? We think not. The act in question contains the elements of its own destruction. It attempts to kill and make alive at the same instant, an impossibility." See also: *McChesney v. Trenton,* 50 N. J. L. 338; *Hunziker v. Kent,* 111 N. J. L. 565; *State ex rel. v. Leonard,* 86 Tenn. 485. An early case in point is *Case of Gibbes,* 1 Desaussure's Eq. Reports 587 (S. C.). Under the constitution of that state the only method of removing a "master in equity" was by impeachment. The legislature passed a new judiciary law, substituting a "commissioner and register in equity" for a "master in equity." The court in declaring the act unconstitutional, said, at page 588, "If the bare changing of the name, and not the duty of the officer was sufficient to deprive him of his office, the legislature might thus get rid of any officer, and thereby render the clause in the Constitution respecting impeachments a mere nullity."

An office not constitutional exists by the will of the

legislature only, and may be abolished at any time, and the incumbent has no standing to complain: *Com. v. Weir,* 165 Pa. 284. It does not follow, however, that the legislature can, by direct or indirect means, continue the office and remove an incumbent whom it has not appointed. And it may not, for such purpose, change the appointing power, thereby shifting the power of removal. The right to remove "appointed officers" (and civil service commissioners "elected" by city council fall within that classification: see *Com. ex rel. v. Likeley,* 267 Pa. 310) is conferred, not upon the appointing power, but upon "the power by which they *shall have been appointed.*" [Italics added.] That the constitutional method of removal provided in Article VI, section 4, is exclusive and prohibitory of any other mode which the legislature may deem better or more convenient is no longer open to question *(Bowman's Case,* 225 Pa. 364; *Com. ex rel. v. Hoyt,* 254 Pa. 45; *Com. ex rel. v. Reid,* 265 Pa. 328; *Com. ex rel. v. Benn,* 284 Pa. 421; *Com. ex rel. v. Kelly,* 322 Pa. 178), except where the legislature in creating the office prescribes a different method: *Georges Township School Directors,* 286 Pa. 129; *Milford Township Supervisors' Removal,* 291 Pa. 46. It follows, since there was no real abolishment of the office, that the attempted removal of the then existing commisisoners was beyond the power of the legislature. Under the Constitution they could be removed only by the power which appointed them.

These acts are also violative of Article III, section 13. Here again the abolition of an office is not prohibited; clearly forbidden, however, is the diminution of an incumbent's salary or emoluments during the term if the office continues. This constitutional provision applies as well to statutory officers as to constitutional officers: *Com. ex rel. v. Moffitt,* 238 Pa. 255; *Com. ex rel. v. Moore,* 266 Pa. 100. Since the effect of the acts would be to deprive the former commissioners of all compensation for the balance of the terms for which they were ap-

pointed, without abolishing the office, the constitutional restraint is a complete bar.

Though our conclusions seem self-evident, appellants insist, however, that the legislation is valid. There is little force in their position because they have not been able to find a single case to support them. The cases they cite are not in point. Some of them had nothing to do with abolishing an office or removing an incumbent, and were decided under the Constitution of 1838.[3] The rest have to do with statutes instituting comprehensive reorganizations of local government.[4] Appellants have shown no precedent for their proposition that the legislature may remove an incumbent from a continuing appointive office and permit another appointing power to fill the vacancy. This is not surprising because the proposition is directly opposed to the Constitution.

We conclude these acts are in conflict with Article VI, section 4, which protects appointed officers from removal by legislative action (save in the case of the genuine abolition of an office) by vesting the power of removal exclusively in the authority by which the officers "shall have been appointed." The acts are also violative of Article III, section 13, which still further protects public officers from legislative interference, by forbidding any law reducing the incumbents' compensation, assuming the continuance of the offices, during the terms for which the officers were elected or appointed. In view of our conclusion that the Act of March 30, 1937, supra, is unconstitutional in substance, it is not necessary to pass upon its alleged defective title.

We realize it is not our function to question the wisdom or expediency of this legislation. We have considered it only as affected by the Constitution.

The judgment of ouster is affirmed.

[3] Com. v. McCombs, 56 Pa. 436; Philadelphia v. Fox, 64 Pa. 169.

[4] Com. v. Moir, 199 Pa. 534; Com. ex rel. v. Weir, 165 Pa. 284; Lloyd v. Smith, 176 Pa. 213.