## Commonwealth ex rel. v. Green et al.

*Charles F. Kelley*, district attorney, and *William A. Schnader*, for plaintiff.

*Charles J. Margiotti* and *Gerald A. Gleason*, for defendants.

FLOOD, J., August 19, 1937.—The Commonwealth upon the relation of the District Attorney of Philadelphia County has brought this action of quo warranto to determine the right of respondents to hold the office of mercantile appraisers for the County of Philadelphia under the appointment of the Auditor General, acting under the authority of the Act of May 28, 1937 (no. 285), which, excluding its title, reads as follows:

"Section 1. Be it enacted, &c., That section one of the act, approved the seventeenth day of July, one thousand nine hundred nineteen (Pamphlet Laws, one thousand twenty-five), entitled 'A supplement to an act, approved the second day of May, one thousand eight hundred and ninety-nine (Pamphlet Laws, one hundred and eighty-four), entitled "An act to provide revenue by imposing a mercantile license tax on vendors of or dealers in goods, wares, and merchandise, and providing for the collection of said tax," ' is hereby amended to read as follows:

"Section 1. Be it enacted, &c., That in all cities of the first class, on or before the *first* day of *June, one thousand nine hundred and thirty-seven*, and *on or before the first day of June of each year* thereafter, the Auditor General shall appoint five suitable qualified citizens as mercantile appraisers for *a period of one year*. Not all of said appraisers shall be members of the same political party. The

powers, duties, and compensation of said appraisers shall be as now provided by law.

"Section 2. The terms of mercantile appraisers in cities of the first class in office immediately prior to the first day of June, one thousand nine hundred thirty-seven, are hereby terminated as of that date.

"Section 3. This act shall become effective immediately upon its final enactment."

This act is attacked upon the grounds that it violates article III, sec. 13, and article VI, sec. 4, of the Constitution of Pennsylvania. Petitioners claim that the case is ruled in this respect by the decisions handed down by the Supreme Court on July 7th of this year in the cases of Commonwealth v. Clark, 327 Pa. 181, Suermann v. Hadley, 327 Pa. 190, and Commonwealth v. McElwee, 327 Pa. 148.

Article III, sec. 13, provides:

"No law shall extend the term of any public Officer, or increase or diminish his salary or emoluments, after his election or appointment."

In the case of Commonwealth v. Clark, which concerned an act terminating the terms of the Civil Service Commissioners of Philadelphia County, the Supreme Court stated:

"These acts are also violative of article III, sec. 13. Here again the abolition of an office is not prohibited; clearly forbidden, however, is the diminution of an incumbent's salary or emoluments during the term if the office continues. This constitutional provision applies as well to statutory officers as to constitutional officers: Commonwealth ex rel. v. Moffitt, 238 Pa. 255; Commonwealth ex rel. v. Moore, 266 Pa. 100. Since the effect of the acts would be to deprive the former commissioners of all compensation for the balance of the terms for which they were appointed without abolishing the office, the constitutional restraint is a complete bar."

However, in Suermann v. Hadley, supra, which passed upon an act in which the legislature terminated the terms

of the members of the Board of Revision of Taxes in Philadelphia, the Supreme Court said:

"While the legislature may diminish a term of office or curtail it, without offending article III, sec. 13, they can not violate article VI, sec. 4 in so doing."

Respondents urge that there is a direct conflict between these statements which must be resolved in their favor, since every intendment must be in favor of the constitutionality of the act. It would be our duty to resolve the doubt in favor of its constitutionality, if the act did not violate article VI, sec. 4.

The pertinent provision of article VI, sec. 4, is as follows: "Appointed officers . . . may be removed at the pleasure of the power by which they shall have been appointed."

The decisions above mentioned are unanimous in holding that this clause provides an exclusive method for the removal of appointed officers and that neither the legislature nor any person other than the power by which they shall have been appointed may remove them except: (1) Where the office itself is abolished; (2) where a condition of tenure is annexed to the office at the time of its creation; or (3) as an incident to a bona fide reorganization of a government agency. Since this case does not fall within any of these exceptions, we have no alternative but to hold that it falls within the general rule, laid down in the above decisions of the Supreme Court, and we must hold section 2 unconstitutional.

Section 1 is in a different category. In accordance with familiar rules we must construe section 1 to operate only prospectively so as to enable the Auditor General to appoint only to fill vacancies occurring after the effective date of the act by reason of resignation, death, expiration of term, or removal by some constitutional method and to remove at his pleasure only those who are appointed under the new act. So construed, section 1 is constitutional.

We realize the public importance of this matter and

have taken time for consideration of all of the arguments presented by respondents, and others which have suggested themselves to us during our study of the case. This public interest demands that some, at least, of the matters which we have considered be expressed in this opinion.

1. *Jurisdiction.* Under the Act of June 14, 1836, P. L. 621, 12 PS §§2021, 2022, governing quo warranto, the Supreme Court was given jurisdiction in the case of all officers, and the common pleas courts were given concurrent jurisdiction in the case of county officers only. The Constitution of 1874 reduced the original jurisdiction of the Supreme Court in quo warranto to cover only State officers whose jurisdiction extends over the whole State: article V, sec. 3; but did not expand the jurisdiction of the common pleas courts. We therefore had a situation immediately after the ratification of the Constitution in which neither court had original jurisdiction in a case involving State officers, such as mercantile appraisers*, whose jurisdiction does not extend beyond the county for which they were appointed.

The Act of July 10, 1901, P. L. 637, sec. 1, 17 PS §254, gives the court of common pleas jurisdiction in all cases in which the Commonwealth is a party except tax cases. This language must, of course, be interpreted reasonably. The Supreme Court has said that it does not include criminal cases, although literally they are within the ambit of the clause.

Since a literal interpretation cannot be adopted, it might be reasonably argued that the act was intended to cover only cases where the Commonwealth had a property interest. However, the Supreme Court has held that

---

* Commonwealth ex rel. v. Collier, 213 Pa. 138 (1905); Davis v. Moore, 50 Pa. Superior Ct. 494, 495 (1912); Women Officers, 40 Pa. C. C. 681, 683 (1912). Joos v. Commonwealth of Pa., 19 Dauph. 254 (1916), which at a glance seems to hold that mercantile appraisers are not State officers, holds that they are not officers at all. As to this, the decision is not authority in view of Commonwealth ex rel. v. Kelly et al., 322 Pa. 178 (1936).

this act has broadened the jurisdiction of the common pleas courts to cover all cases of quo warranto: Commonwealth ex rel. v. Wherry et al., 302 Pa. 134 (1930). Although this case did not involve State officers, the principle laid down clearly covers them.

2. *District Attorney as Relator.* Several lower court cases have held that the district attorney cannot act as relator in the case of officers commissioned by the Governor, or matters concerning the Commonwealth alone: Commonwealth ex rel. v. Reed, 18 Pitts. (O. S.) 131 (1870); Commonwealth ex rel. v. Reilly, 35 Pitts. 353 (1905); Commonwealth ex rel. v. Chidsey, 1 Northamp. 345 (1888); Consolidated Stock Exchange of Phila., 31 Pa. C. C. 226, 228 (1905) (opinion of Attorney General).

However, the Act of May 3, 1850, P. L. 654, 16 PS §3431, provides that the district attorney shall "conduct in court all criminal or other prosecutions in the name of the commonwealth, or when the state is a party, which. arise in the county for which he is elected".

In view of the definite holding of the Supreme Court in Commonwealth ex rel. v. Wherry et al., supra, that the Commonwealth is a party in quo warranto proceedings, we must decline to recognize the authority of these county court decisions, and we therefore hold that the district attorney may properly act as relator in this case, under the terms of the Act of 1850, supra.

3. No act of the legislature may be stricken down unless it is clearly unconstitutional, and a lower court must be particularly cautious in nullifying the legislative will. But the lower court must defer to the clearly expressed judgment of the Supreme Court.

The Supreme Court of Pennsylvania has very recently emphasized the limited function of the doctrine of stare decisis, and the insecurity of precedent as a guide, in constitutional questions.

In the recent case of Commonwealth ex rel. v. Lawrence et al., 326 Pa. 526, the Supreme Court, by Mr. Chief Justice Kephart, quotes approvingly from 1 Cooley on

Constitutional Limitations (8th ed.) 121, notes, as follows:

". . . when a question involving important public or private rights, extending through all coming time, has been passed upon on a single occasion, and which decision can in no just sense be said to have been acquiesced in, it is not only the right, but the duty, of the court, when properly called upon, to re-examine the questions involved, and again subject them to judicial scrutiny. We are by no means unmindful of the salutary tendency of the rule *stare decisis*, but at the same time we cannot be unmindful of the lessons furnished by our own consciousness, as well as by judicial history, of the liability to error and the advantages of review."

However, this does not mean that we may refuse to apply in the decision of this case principles laid down only yesterday by the Supreme Court, principles clearly necessary to the decision of the cases before the court and in no sense to be dismissed as obiter dicta. In Commonwealth v. Clark, supra, the Supreme Court held that, none of the above-mentioned exceptions appearing, the legislature could not remove the civil service commissioners of Philadelphia, for the reason that they were appointed officers, protected by article VI, sec. 4, of the Constitution from removal by any power other than that by which they had been appointed. It also held that for the same reason they could not be removed indirectly by a shift in the appointing power, since the Constitution confines removal to "the power by which they shall have been appointed." This reasoning applies so clearly to the case before us that to disregard it could be termed capricious. The intendment in favor of the constitutionality of the act cannot prevail against this obstacle. Irrespective of the effect of the doctrine of stare decisis upon the Supreme Court, judicial precedence requires a lower court to apply the principles applied by the Supreme Court in substantially identical situations, even though the highest court of the State may be free to disapprove those principles in the

future, even, indeed, upon appeal in this case, and even though we might be inclined to decide the case otherwise if these recent cases did not control us: 15 C. J. 920, sec. 308.

For this reason we have had to reject certain arguments that might have appealed strongly to us if the matter were res integra.

4. Into this category falls the argument that the Constitution does not in so many words prohibit the legislature from removing appointed officers. In the Suermann case, supra, it is held that the methods of removal laid down in article VI of the Constitution are exclusive, except in the case of the three exceptions above mentioned. The case of Commonwealth ex rel. v. Benn, 284 Pa. 421 (1925), sometimes considered to lay down another exception, does not in reality do so, but is rather a unique case involving an extraordinary interpretation of the appointing power which has not been followed in any other case, and the Supreme Court in the recent cases above mentioned has indicated that it is not to be extended beyond its precise facts: Cf. Commonwealth ex rel. v. Kelly et al., 322 Pa. 178 (1936). We do not have here either the situation involved in the Benn case, nor one coming within any of the three exceptions.

5. In the same category is the argument that the power to remove follows the power to appoint and that the nicety of tense sequence involved in the use of the phrase "shall have been appointed" should not be seized upon to prevent a new appointing power from removing his predecessor's appointees. When the power to appoint has been changed and the power to remove separated from it, confusion and collision threaten. The most cogent arguments should be required to sustain the separation of these powers. Looking from the vantage point in time of the framers, the use of the phrase "are appointed" would have been an improper sequence of tenses. Hence with the grammatical meticulousness for which the time was

noted, the phrase "are appointed", adopted finally by the framers: 8 Debates Constitutional Convention 125, 126 (1872) ; was changed to "shall have been appointed" before submission to the voters. No explanation has been found as to how the word "are" adopted finally by the convention was changed to "shall have been" at submission. Whether this was done by a committee on style or an officious clerk or printer, our researches have failed to disclose.

Interesting as this speculation may be, it cannot sway our decision in view of the language of the Supreme Court. In the case of Commonwealth v. Clark, supra, the court said:

"And [the legislature] may not, for such purpose, change the appointing power, thereby shifting the power of removal. The right to remove 'appointed officers' (and civil service commissioners 'elected' by city council fall within that classification: See Commonwealth ex rel. v. Likeley, 267 Pa. 310) is conferred, not upon the appointing power, but upon 'the power by which they *shall have been appointed*' ".

Again, in Commonwealth v. McElwee, supra, the Supreme Court said:

"As the legislature did not appoint the *incumbents*, it cannot remove them. Their titles to office did not come from the legislature. What under our system of government the legislature does not create it cannot destroy."

6. It has been urged that certain distinctions which exist in this case render inapplicable the principles laid down in the Supreme Court cases above mentioned so that they are not controlling upon us. It is suggested that the Auditor General remains the appointing power as he was before, even though, to be sure, the city treasurer had to join with him before, and now he may appoint alone. This, however, seems to us in direct conflict with the opinion in Commonwealth ex rel. v. Kelly et al., supra, which we take to have decided that one of the appointing officers could not alone appoint or remove. The Kelly

opinion likewise disposes of the similar suggestion that the Auditor General is the real appointing power, as was the legislature in the case of Commonwealth v. Benn, supra, and that under the various acts of assembly governing mercantile appraisers they are subject to the supervision of the Auditor General, one of the chief fiscal officers of the State, and that the city treasurer was merely an agent of the State fiscal officers as the Governor and Senate were the agents of the legislature in the Benn case.

7. Again it has been argued that this act falls within the exception relating to a comprehensive reorganization, in that it is the last step in a reorganization of the system of collecting mercantile license taxes, since this is the last of a series of changes over a period of years which finally vests in the Auditor General the power of appointing all mercantile appraisers. Unfortunately for this argument, the change effected by this legislation is far more limited in scope than the reorganization effected under the acts considered by the Supreme Court in Suermann v. Hadley, supra, and Commonwealth v. Clark, supra. Indeed, in view of the decisions in those cases, we feel that the exception regarding reorganization of a branch of the government must be given an extremely limited construction.

8. The argument which we have felt most deserving of consideration in this case is that the matter is one requiring a fourth exception to be made to the general rule that the legislature cannot curtail the terms of appointed public officers. Our attention has been drawn to the situation with regard to mercantile appraisers which existed in Philadelphia a year ago, and which is described in the opinion of the Supreme Court in the case of Commonwealth ex rel. v. Kelly et al. The two appointing officers would not act together. Then one attempted to act alone. His appointees and those holding over both claimed the office. The shocking spectacle thereupon presented itself of the throttling of a vital public function, the collection of taxes. The collection of taxes was impeded and serious

public loss was threatened. This was the sort of condition the legislature would obviate by this act, vesting the appointing power in a single State officer.

The method of appointment of mercantile appraisers in Philadelphia County is, so far as our researches have disclosed, unique in Pennsylvania. Nor has our attention been called to any similar situation in the Federal Government or in that of any other State. In many instances, it is true, different members of public bodies are appointed by different officers: Compare the new legislation sustained in Suermann v. Hadley, supra. But here two appointing officers must appoint a board of five, at least one of whom must be a member of the minority party. It is suggested that, upon any realistic basis, no agreement could ever be expected if the two appointing officers were members of different parties, and that the courts should not be so blind as not to perceive that this was the sort of arrangement that might be inaugurated when one political party completely controlled the State and that it would become completely unworkable when that situation changed. It is said that in view of the fact that the two-party system is rooted in our public policy, and that its healthy functioning seems to be a requisite of healthy democratic government, an act excising such a diseased growth in our system should be upheld if possible: Compare the language of Mr. Justice Maxey in Commonwealth v. McElwee, supra, as to the proper approach in constitutional questions when the act involved creates an anomaly in our system of government. Mr. Justice Maxey states that the creation of an anomaly in our system causes the judicial intendment in favor of constitutionality to lose much of its force with regard to the act creating the anomaly. By similar and equally cogent reasoning, that judicial intendment in favor of constitutionality is greatly fortified when the act under consideration removes such an anomaly.

Should these considerations move us, and does precedent allow us, to set up a fourth exception in addition to

the three already judicially formulated? Cannot the legislature immediately end a situation where, because of partisan dispute between the two appointing officers, it may be impossible to remove an obviously unfit official? Is not the public policy here involved as vital as that which dictated the three exceptions already laid down by the court?

Impressive as this argument might be from the standpoint of public policy, the general rule recently laid down by the Supreme Court negativing the legislative power to curtail the term of an appointive officer is sweeping. Its exceptions are limited. The Supreme Court has not indicated any common basis for the three exceptions, and we have been unable to group them under any larger theory which might justify further exceptions. We feel therefore, that we are bound by the general rule.

9. Counsel has also urged that the city treasurer, by signing the pay warrants of respondents, consented to their appointment and therefore, impliedly, to the removal of their predecessors. The supplemental answer avers that the city treasurer on or about June 8, 1937, certified to the payroll of the then employes of the board of mercantile appraisers as certified to him by respondent Green as president of the newly appointed board, which payroll contained the names of the employes, the amounts of their compensation in the case of each individual employe, and the amount to which that employe was entitled for services rendered for the period, and that after approval of said payroll by the Auditor General the city treasurer actually paid to the various employes whose names appeared on the payroll the amounts of compensation set forth therein.

The argument is made that this action on the part of the city treasurer constitutes a waiver of his right to participate in the removal of the existing officers and the appointment of the new ones and an implied consent to the appointments of the Auditor General. However, it seems to us that this is the performance of an official duty rising little

above the ministerial and one that cannot be construed as an exercise of the treasurer's power to join in the appointment or removal of the mercantile appraisers. Moreover, if these employes actually did the work of the department for the period, they are entitled to be paid for that work even though they might be appointed by or acting under the direction of a board of mercantile appraisers which was merely a de facto board. The employes of this de facto board are entitled to be paid for the period during which they actually work: See the orders of Mr. Chief Justice Kephart, dated June 25, 1937, in the case of Suermann v. Hadley, supra, and the other cases of quo warranto decided on July 7, 1937. Therefore the approval of the payroll covering the employes of the de facto board was the duty of the city treasurer and did not imply in any respect the consent to or the approval of the appointment of the board itself. There is no statement in the pleadings or in the briefs that the city treasurer has approved the payroll of the mercantile appraisers themselves or paid them or did any other act recognizing the authority of the board, except as above mentioned.

Respondent Green is a member of the board which is reinstated as a result of this opinion. Although his own claim that he holds office as an appointee of the Auditor General alone is invalid, he remains a member of the board, since he was validly appointed under the original act by the Auditor General and the city treasurer. Therefore, no ouster should be entered as against him. As to the other respondents, we are unanimously of the opinion that a judgment of ouster must be entered against them in accordance with the principles expressed herein.

Judgment is entered in favor of the Commonwealth and against respondents. Respondent Green will remain a member of the board under his prior appointment and the other respondents are ousted as members of the Board of Mercantile Appraisers for the City and County of Philadelphia, offices which they claim to hold.