## Commonwealth v. Kornig

*Raymond R. Start*, district attorney; *Joseph E. Pappano*, first assistant district attorney and *Ernest L. Green*, Jr., assistant district attorney, for Commonwealth.

*R. Paul Lessey*, for defendant.

BRETHERICK, J., February 29, 1952.—We have before us defendant's motion to quash a transcript from a justice of the peace. The sole question raised is whether the operator of a vehicle involved in an accident resulting in damage to unattended property is guilty of a misdemeanor under section 1025(a) of The Vehicle Code of May 1, 1929, P. L. 905, as amended by the Act of June 29, 1937, P. L. 2329, or of a summary offense under section 1025(d) of the code, if he fails to stop at the scene of the accident. We agree with counsel for defendant that such operator is guilty of a summary offense, but we cannot accept the reasoning upon which counsel bases his conclusion.

It appears from the transcript that an information was made charging that defendant operated a motor vehicle upon a public highway within this county, and failed "to stop said motor vehicle after being involved in an accident, *in which property was damaged*—Subsection A, Section 1025, Article 10, Motor Vehicle Code" (Italics supplied). It further appears that defendant was arrested, and, after hearing, was placed under bail conditioned for his appearance at the next term of court.

So far as the transcript discloses, the information failed to disclose whether the property damaged was attended or unattended, or what was the nature of the property. From the extracts of the evidence incorporated in the return, it appears that the accident involved a parked motor vehicle, but it is not clear whether the vehicle was attended or unattended. However, the Commonwealth concedes, as we understand it, that defendant's automobile came into contact with an unattended, parked automobile. (We know of no authority which holds that a justice of the peace, in a criminal transcript, must state the evidence on which he bases his decision that a prima facie case has been made out and defendant held for the action of the

court. The extract of the evidence, incorporated in the return of the justice, therefore, is not an essential part of the transcript, and may be treated as surplusage).

Neither of our appellate courts, apparently, has had occasion to consider the question before us. The researches of learned counsel, as well as our own, disclose reported decisions on the subject from but two of our lower courts. It may be added that these courts, after painstaking consideration, reached directly opposite conclusions.

It seems necessary, in the interest of order and perspicuity in the presentation of our views, to set forth section 1025 of the code, 75 PS §634, in full text:

"(a) The driver of any vehicle involved in an accident, resulting in injury or death to any person or damage to property, shall immediately stop such vehicle at the scene of such accident.

"(b) The driver and owner, if present, of any vehicle involved in any accident, resulting in injury or death to any person or damage to property, shall give his name, address, and the registration number of his vehicle, and exhibit his operator's license to the person struck, or the driver or occupants of any vehicle involved, or the owner or custodian of any property involved, unless the person struck, or the driver of the vehicle or the custodian of the property involved, signifies that no injuries have been received or damages sustained, and shall render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment, if it is apparent that such treatment is necessary, or is requested by the injured person.

"(c) Whenever the driver of a vehicle is physically unable to give the information or assistance required in this section, and there are other occupants of the

vehicle at the time of the accident who are physically able to give the information or assistance required in this section, then each of such other occupants shall fully reveal the identity of himself and the identity of the driver of the vehicle, and of the owner of the vehicle of which they were occupants, to the person struck, or to the driver or occupants of any vehicle involved, or to the owner or custodian of any property involved, and shall render to any such person injured in such accident, reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment, if it is apparent that such treatment is necessary, or is requested by the injured person.

"(d) The driver of any vehicle, street car, or trackless trolley omnibus, which is involved in an accident with any vehicle or property which is unattended, shall immediately stop, and shall then and there either locate and notify the operator or owner of such unattended vehicle, or the owner or custodian of such unattended property, of the name and address of the driver and owner of the vehicle involved in such accident with the unattended vehicle or property, or shall leave in a conspicuous place, in or upon the unattended vehicle or property, a written notice, giving the name and address of the driver, and of the owner of the vehicle involved in such accident, and a statement of the circumstances thereof, and also shall, within twenty-four (24) hours, forward to the department a similar notice regardless of the amount of damage done to such unattended vehicle or property.

"(e) The operator of any street car or trackless trolley omnibus involved in an accident, resulting in injury or death to any person or damage to property, shall give his name and address to the person struck, or the driver or occupants of the vehicle involved, or the owner or custodian of any property involved, and

shall render to any person injured in such accident, reasonable assistance, including the carrying of or the securing of carriage for such person to a physician or surgeon for medical or surgical treatment, if it is apparent that such treatment is necessary, or is requested by the injured person.

"Penalty.—Any person violating any of the provisions of subsections (a), (b) or (e) of this section, shall be guilty of a misdemeanor, and shall, upon conviction thereof in a court of quarter sessions, be sentenced to pay a fine of not more than two hundred ($200) dollars and costs of prosecution, or undergo imprisonment for not more than three (3) years, or suffer both such fine and imprisonment.

"Penalty.—Any person violating any of the provisions of subsections (c) or (d) of this section shall, upon summary conviction before a magistrate, be sentenced to pay a fine of twenty-five ($25) dollars and costs of prosecution, and, in default of the payment thereof, shall undergo imprisonment for not more than (5) days."

It needs to be stated that subsections (c), (d) and (e) were added by the amendatory Act of June 29, 1937, P. L. 2329, sec. 3.

If we give to the language of section 1025 its literal meaning, it is apparent that the operator of a vehicle involved in an accident resulting in damage to unattended property is guilty of a misdemeanor under subsection (a), and also of a summary offense under subsection (d), if he fails to stop at the scene of the accident. Such result seems not to have been within the legislative contemplation. We do not believe that the legislature intended to single out this particular offense, certainly not the most serious one, and provide for it a greater penalty than for any other of the numerous offenses defined in that section. It becomes necessary, therefore, to determine what was the inten-

tion of the legislature. This is the object of all interpretation and construction of laws: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551.

Counsel for defendant, following the ruling in Commonwealth v. Kane, 38 D. & C. 480, contends that subsection (a) is a general provision, and subsection (d) a special provision; that the two provisions are in irreconcilable conflict, and, hence, the special provision shall prevail and shall be construed as an exception to the general provision, citing section 63 of the Statutory Construction Act, 46 PS 563.

We are not satisfied that subsection (a) is a general provision. We see no distinction whatever between or among the various subsections as general or special. Each subsection, in our opinion, provides for a separate and distinct situation. All of the subsections, we think, are on a parity.

It is true that, as the court pointed out in the Kane case, supra, at page 481, prior to the amendment of 1937 the driver of a vehicle who failed to stop immediately after being involved in an accident resulting in damage to property was guilty of a misdemeanor under section 1025(a) of The Vehicle Code, whether the property was attended or unattended. But the construction of section 1025 prior to the amendment is not conclusive, is not, indeed, of particular significance, at the present time.

"Whenever a section or part of a law is amended, the amendment shall be construed as merging into the original law, become a part thereof, and replace the part amended and the remainder of the original law and the amendment shall be read together and viewed as one law passed at one time . . .": Statutory Construction Act of 1937, sec. 73, 46 PS §573.

"Being but amendments, the two later statutes, which do not repeal anything in the earlier act, must

be treated as if written into it, for the purpose of determining the scope and effect of the three": Commonwealth, to use, v. Barrett et al., 304 Pa. 13, 16. And see, Commonwealth ex rel. Kelley v. Clark, 327 Pa. 181, 185.

"Every part of a statute should be brought into action in order to collect from the whole one uniform and consistent sense, if that may be done; or, in other words, the construction must be made upon the entire statute, and not merely upon disjointed parts of it: Broom's Legal Maxims 513. 'It is the most natural and genuine exposition of a statute,' says Lord Coke, 'to construe one part of the statute by another part of the same statute, for that best expresseth the meaning of the makers:' Co. Litt. 381a": Holl v. Deshler, 71 Pa. 299, 301.

As we view the matter, then, we are free, and, indeed, obliged, to construe section 1025 as an integrated whole, and if any part of the original law takes on a new or different coloration in the light of the language or context of the amendment, we are not bound by any prior construction of a disjointed fragment.

Conflicting clauses in a statute of course must be reconciled if this can be done consistently with the main purposes of the enactment: Cammie v. I. T. E. Circuit Breaker Company, et al., 151 Pa. Superior Ct. 246, 251. Incongruities must be so construed as to harmonize the general interest of the whole act: Commonwealth v. Conyngham, 66 Pa. 99. Every law shall be construed, if possible, to give effect to all its provision: Statutory Construction Act, sec. 51, 46 PS §551. Courts may be guided by the presumption that the legislature intends the entire statute to be effective and certain: Statutory Construction Act, sec. 52, 46 PS §552.

Consistent with these principles, we are impelled to the conclusion that the reference to "property" in

subsection (*a*) is to *attended* property. If the legislature had intended property, generally—unattended as well as attended—it would not have gone on to make express provision, in subsection (*d*), for cases involving *unattended* property.

Our conclusion is, therefore, that section 1025(*a*) of The Vehicle Code should be read as if the word "attended" appeared before the word "property".

". . . a primary rule of construction . . . is that, in applying a statute, the first duty of the court is to ascertain and give effect to the intention of the legislature," . . . and when "necessary . . . to effectuate a plain legislative intent, . . . additional . . . words [may be] interpolated": Commonwealth v. Peoples et al., 345 Pa. 576, and cases there cited.

We think this construction reconciles all real or apparent conflicts in the language of the section, gives certainty and effect to all its provisions, and effectuates the clearly discernible intent of the legislature. What is more, such construction enables us to collect from the whole one uniform and consistent sense, and imparts order, logic and symmetry in the several parts of the section. It is obvious from the sense of the language that the references to property in subsections (*b*), (*c*) and (*e*) are to *attended* property. Under our construction of subsection (*a*), it is clear that subsections (*a*) and (*b*) define the duties of *the driver of a vehicle* involved in an accident, resulting in injury or death to any person or damage to *attended* property. Subsection (*c*) merely devolves the driver's duties on other occupants of the vehicle, if any, in the event of the driver's physical disability. Subsection (*e*) prescribes the duties of *the operator of a street car or trackless trolley omnibus* involved in an accident, resulting in injury or death to any person or damage to *attended* property. (Manifestly, the duties of the driver of a vehicle differ from the duties of the opera-

tor of a street car or trackless trolley omnibus, in the case of accidents involving persons and attended property). Subsection (d) deals with the duties of *the driver, of a vehicle, street car, or trackless trolley omnibus*, which is involved in an accident with any vehicle or property which is *unattended*. (Obviously, the duties of the driver of a vehicle, street car, and trackless trolley omnibus do not differ in the case of accidents involving unattended vehicles or property).

We have read with great care the able and comprehensive brief submitted on behalf of the Commonwealth. Many of the arguments which it contains have much to recommend them in the way of reason and logic. Nevertheless, after full consideration we think our conclusion more nearly accords with the legislative intent as manifested in the language of the law.

It has been said that our construction of the law leads to absurd or unreasonable results. In the Kane case, supra, the court said (p. 483) :

"We cannot see how the fact of the property damaged being attended or unattended has any bearing whatever upon the offense, the gist of which is the failure to stop".

The difference, we think, is in the mental character of the act. A motorist who speeds away without stopping after an accident involving an attended vehicle exhibits a certain frowardness, a cynical and reckless indifference to the physical welfare and safety of the occupants. The mere circumstance that, unknown to the offender, no personal injury was sustained, does not alter the mental content of the act. In the Kane case, it is said (p. 483) :

"Ordinarily, the 'hit-and-run' driver neither knows nor cares whether the property damaged is attended or unattended; his sole thought is to get away and hide his identity".

To the first of these statements, we must record our emphatic dissent, however cordially we may agree with the second. The "hit-and-run" driver involved with another moving vehicle—and such is by far the most usual case—certainly knows whether the property damaged is attended or unattended. There may be rare instances, as in the case of collision with a building, where the converse would be true. However, the law, in its universality, is framed with a view to the usual and general, not to the rare and exceptional.

We recognize that our conclusion is at odds with that of the Court of Quarter Sessions of Montgomery County. The learning and ability of that eminent court entitle its views to the most serious consideration. After mature deliberation, however, we find ourselves unable to acquiesce in the rulings in Commonwealth v. Wolfendale, 43 D. & C. 230, and Commonwealth v. Baker, 53 D. & C. 702. Contrary to defendant's contention, these cases were not overruled by Commonwealth v. Moore, 63 D. & C. 193. The Moore case did not involve a prosecution for failure to stop and, consequently, has no bearing whatever on the question.

Since it appears from the transcript that defendant is charged only with failure to stop after being involved in an accident with an unattended vehicle, a summary offense under section 1025 (d) of The Vehicle Code and not a misdemeanor under section 1025 (a), it follows that the transcript must be quashed.

### Order

And now, February 29, 1952, upon consideration of the foregoing case, it is ordered, adjudged and decreed that defendant's rule to show cause why the transcript in this case should not be quashed be, and the same is, hereby made absolute, and the transcript is hereby quashed.