## Wallace v. Hanna

*Samuel J. Feigus*, for plaintiff.
*Anthony Cavalcante*, for defendant.

CARR, P. J., April 7, 1955.—We have now to determine which of the two parties to this action of quo warranto, plaintiff, George Wallace, or defendant, Anthony Hanna, is legally entitled to the office of president of council of the Borough of Masontown. By agreement of the parties, the case was heard without a jury. The evidence is largely documentary, and presents no material issue of fact.

*Findings of Fact*

1. On Monday, January 4, 1954, Gerald Lofstead, Joseph Urbany, Stephen Ketchell, George Wallace, Floyd Carnicelli, Paul Albani and Anthony Hanna constituted the council of the Borough of Masontown, the first three having been elected thereto at the municipal election on Tuesday, November 6, 1951, and the other four at the municipal election on Tuesday, November 4, 1953, each for a term of four years beginning on the first Monday of January next succeeding his election.

2. At the biennial organization meeting of the council held as prescribed by statute on Monday, January 4, 1954, defendant, Anthony Hanna, was appointed president of the council by the votes of Lofstead, Urbany, Wallace, Albani and Carnicelli. Ketchell and Hanna, though present, did not vote.

3. On Monday, August 9, 1954, Hanna, as president of the council, caused a notice to be served by registered mail upon Lofstead, Urbany and Ketchell stating that a special meeting of the council would be held in the borough building on Wednesday, August 11, 1954, at 7 p.m., for the purpose of giving them an opportunity to show cause why their offices as councilmen should not be declared vacant under section 905 of the Borough Code for failure to attend meetings on Tuesday, July 20, 1954, Friday, July 30, 1954, and Friday, August 6, 1954, at which only Hanna, Albani and Carnicelli had appeared.

4. On Wednesday, August 11, 1954, at 7 p.m., Hanna, Albani and Carnicelli met in the borough building, and at 7:30 p.m. Hanna called the meeting to order, though only the three were present. It was then moved by Carnicelli, seconded by Albani, that the following resolution be adopted:

"WHEREAS Councilmen Gerald E. Lofstead, Joseph J. Urbany and Stephen Ketchell have neglected

and refused to attend two successive regular meetings of this council, to wit, the regular meeting of July 30, 1954, and the regular meeting of August 6, 1954, and

"WHEREAS the said Councilmen Lofstead, Urbany and Ketchell have further neglected to attend two special meetings of this council, to wit, the special meeting of July 20, 1954, and the special meeting of August 11, 1954; and

"WHEREAS the said Councilmen Lofstead, Urbany and Ketchell were not detained by sickness or prevented by necessary absence from the borough from attending said regular and special meetings:

"NOW, BE IT RESOLVED, pursuant to Section 905 of the Borough Code, that the councilmanic offices of said Gerald E. Lofstead, Joseph Urbany and Stephen Ketchell be and the same are hereby declared vacant."

Upon roll call the vote was Albani, yes; Carnicelli, yes; and Hanna, yes. The three councilmen present then unanimously appointed Victor E. Shine as councilman for Lofstead's unexpired term.

5. On Friday, August 13, 1954, Hanna, Albani and Carnicelli met in the borough building and proceeded to have Shine sworn in as a member of the council. The four of them then unanimously adopted a resolution reading as follows:

"WHEREAS all meetings of the council have been called and held at the call of the president of council, except when otherwise directed by council, and

"WHEREAS no fixed regular meeting dates have heretofore been established by action of council:

"NOW, BE IT RESOLVED, That the second and fourth Fridays of each month are hereby fixed and declared as the regular meeting dates of this council.

"BE IT FURTHER RESOLVED, That all other meetings of council shall be in accordance with Section 1006 of the Borough Code."

6. On Friday, September 10, 1954, Hanna, Albani and Carnicelli met in the borough building at 7:30 p.m. and, for lack of a quorum, adjourned to Saturday, September 11, 1954, at 10:30 p.m., on which date, at 11:40 p.m., Hanna, Albani and Shine only were present. Hanna then called the meeting to order, whereupon resolutions were adopted by the votes of the three of them reciting the ouster of Urbany and Ketchell and appointing Edward Voithofer and Harlan Rodeheaver for their unexpired terms, respectively.

7. On Monday, September 13, 1954, the second Monday of that month, at 7 p.m., Carnicelli, Ketchell, Lofstead, Urbany and Wallace met in the borough building in regular session, Hanna and Albani being absent. In the absence of president Hanna, Lofstead was chosen president pro tempore, and on motion of Ketchell, seconded by Urbany, all members present voting yes, it was resolved to reorganize the council. Thereupon, with the burgess presiding, Wallace was appointed and seated as president of the council by the votes of Carnicelli, Ketchell, Lofstead, Urbany, and himself.

8. On Tuesday, September 21, 1954, at 7 p.m., in the borough building, pursuant to notice in writing signed by Wallace as president of council and by Lofstead, Ketchell, and Urbany, setting forth that a meeting of the council would then and there be held for the purpose, inter alia, of confirming and ratifying the various resolutions and actions of the council taken at the regular meeting of Monday, September 13, 1954, which notice was served personally upon Hanna, Albani and Carnicelli, as well as the signers, Wallace, Lofstead, Ketchell and Urbany met and unanimously adopted resolutions ratifying and confirming the removal of Hanna as president of council and the appointment of Wallace as president thereof.

9. Although there is no record of any action ever taken by the council to fix the time of its stated or regu-

lar meetings, it has since 1951, at least, been the custom of the council to meet regularly at 7 p.m. on the second and fourth Mondays of each month. The minutes show that during 1954 until the present controversy arose meetings styled "regular" meetings were held on the fourth Monday of January and on the second and fourth Mondays of February, March, April, May, June and July, all of which minutes were signed by Hanna as president of the council, as well as by the secretary.

10. Notwithstanding the action of the council on September 13, 1954, and September 21, 1954, defendant has assumed to exercise and still assumes to exercise the office, rights, privileges and powers of president of council by virtue of his appointment to that office on January 4, 1954.

## Discussion

The contention of defendant is that at the meeting on Monday, September 13, 1954, when Lofstead, Ketchell, Urbany, Carnicelli and Wallace voted to remove him as president of council, Lofstead, Ketchell and Urbany were no longer members of the council, their seats having been vacated by action of the council on August 11, 1954. In our opinion, however, the attempt made on August 11, 1954, to oust the elected councilmen was wholly ineffectual.

The right of the council to declare the seat of a councilman vacant rests upon article IX, sec. 905 of the Borough Code of July 10, 1947, P. L. 1621, 53 PS §12875, which provides as follows:

"If any person, having qualified as a member of council or burgess, shall neglect or refuse to attend two successive regular meetings, unless detained by sickness, or prevented by necessary absence from the borough . . . the borough council, acting without such person, may declare his office as a member of council or burgess vacant, and may fill such vacancy as pro-

vided in section 901 of this act. For such actions a majority of the remaining members of the council shall constitute a quorum."

Thus, by the terms of the Borough Code, no valid action can be taken to vacate the office of any member of the council except for unnecessary failure to attend two successive regular meetings nor unless the action is participated in by a majority of the remaining members. Regular meetings are those convened at stated times pursuant to a standing resolution of the council, or, in the absence of such a resolution, then perhaps at the times, but only at the times, fixed by established custom. Here, as is conceded, the council had never adopted any resolution fixing the time of its stated meetings. It had, however, long regularly met on the second and fourth Mondays of each month, and in the minute book its meetings at those times are uniformly styled "regular" meetings, all others being styled "special." In no event, therefore, could a meeting held on July 20th, the third Tuesday, on July 30th, the fifth Friday, on August 6th, the first Friday, or on August 11th, the second Wednesday, be considered a regular meeting, and consequently, no member was subject to the forfeiture of his office for failing to attend meetings on those dates: Zulich et al. v. Bowman, 42 Pa. 83.

Nor was the action taken on August 11, 1954, to oust Lofstead, Ketchell and Urbany participated in by a majority of the remaining members of the council, as the code requires. When any particular member is charged with unnecessarily failing to attend two successive meetings, he is entitled to be judged by a majority of the "remaining members," and in a council of seven this means by a majority of the remaining six. The "remaining members" include all members then in office other than himself.

To argue that by proceeding against several mem-

bers at one time a minority of the council could disqualify the entire group as a unit from participating in the consideration of any of their cases and thereby reduce the number of the "remaining members" sufficiently to enable the minority to obtain control of the borough government is to flout not only the pointed language of the code but the fundamental principle of majority rule inherent in all our governmental institutions. Section 905 is, moreover, highly penal in that it permits a few individuals liable to be influenced by personal feelings or political rivalries to oust by summary action officers chosen by the electors of the borough to represent them in the conduct of the public business. It is therefore to be strictly construed, and every step in the proceedings must clearly appear to be within the authority conferred. Obviously then, the meeting on August 11, 1954, attended only by Hanna, Albani and Carnicelli, lacked the necessary quorum to declare a vacancy: Commonwealth ex rel. v. Gibbons, 196 Pa. 97; In re Wells Township School District's Directors, 297 Pa. 242; Commonwealth ex rel. Park v. Kaiserman, 330 Pa. 196.

It follows that the attempted ouster of Lofstead, Urbany and Ketchell must be regarded as being without any legal force or effect; they, with Wallace, Hanna, Albani and Carnicelli, still constitute the council.

Finally, as to the right of the council to remove Hanna as president and appoint Wallace to that office, article VI, sec. 4 of the Constitution of Pennsylvania provides that "Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed."

The president of council is, of course, an appointed officer within the meaning of the Constitution, and accordingly, the authority of a majority to effect a

reorganization at any time or for any reason is beyond question: Commonwealth ex rel. v. Likeley, 267 Pa. 310; Commonwealth ex rel. Kelley v. Clark, 327 Pa. 181; Commonwealth ex rel. Schofield v. Lindsay, 330 Pa. 120; Wolfe v. Burleigh, 25 Luz. 6, 12 D. & C. 14.

### Conclusions of Law

1. Defendant was, on September 13, 1954, lawfully removed from the office of president of council of the Borough of Masontown, to which he had been appointed on January 4, 1954.

2. Plaintiff was, on September 13, 1954, lawfully appointed to the office of president of council of the Borough of Masontown, since which time he has been and still is rightfully entitled to hold and exercise said office.

3. Since September 13, 1954, defendant has unlawfully intruded into, usurped and exercised, and still does unlawfully intrude into, usurp and exercise the office, rights, privileges and powers of president of council of the Borough of Masontown.

4. Plaintiff is entitled to judgment that defendant be ousted and altogether excluded from the office of president of council of the Borough of Masontown, and to an injunction restraining defendant from exercising or claiming to occupy said office by virtue of his appointment thereto on January 4, 1954, and from retaining custody of any of the books, records, or papers thereof.

5. Defendant should pay the costs.

### Order Nisi

And now, April 7, 1955, the prothonotary is directed to give prompt notice of this decision to the parties or their attorneys of record, and to enter judgment thereon in favor of plaintiff and against defendant as stated in our conclusions of law, unless exceptions thereto are filed in his office within 30 days after service of such notice.