Commonwealth ex rel. *v.* Kelly et al.

Argued January 7, 1936; reargued April 29, 1936.
Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN,
STERN and BARNES, JJ.

*Grover C. Ladner,* Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, and *Adrian Bonnelly,* Deputy Attorney General, for Auditor General.

*John Robert Jones,* with him *Graham C. Woodward,* for City Treasurer.

*Wm. A. Schnader,* for defendants.

OPINION BY MR. JUSTICE SCHAFFER, May 25, 1936:

Owing to the public interest in this case, the chaotic condition which the situation involved in it threatened

to bring about in the granting of mercantile licenses in the City of Philadelphia where it is alleged there are upward of 60,000 such prospective licensees, the uncertainty in the assessment of the mercantile license taxes, and the threatened loss of revenue to the Commonwealth, if the taxes were not lawfully assessed and duly paid, we assumed jurisdiction of the proceeding by writ of special certiorari. As prompt action was necessary, if unfortunate results were not to follow, we have heretofore issued an order continuing the present mercantile appraisers in office. This opinion is filed for the purpose of stating what the conditions were, our view of the law applicable thereto and the reasons for the order made.

The question for determination was this: The law having directed the auditor general of the Commonwealth and the city treasurer of Philadelphia jointly to appoint mercantile appraisers for that city on or before a prescribed date, if the two officers do not agree on the persons to be appointed and no appointments are made, do the appraisers in office, whose term expired on the date named, continue in office with the power to exercise the functions conferred upon them by law and to enjoy the emoluments of their positions? Our conclusion was and is that they do until their successors are duly appointed according to law.

The act which gives rise to the appointments is that of July 17, 1919, P. L. 1025, 72 PS section 2713, which provides: "That in all cities of the first class, on or before the thirteenth day of December, one thousand nine hundred and nineteen, and quadrennially thereafter, the auditor general and the city treasurer shall appoint five suitable qualified citizens as mercantile appraisers for terms of four years each. Not all of said appraisers shall be members of the same political party. The powers, duties, and compensation of said appraisers shall be as now provided by law." It will be seen that no provision is made in the statute for what is to happen in case the two appointing officials do not make the ap-

pointments, which in this instance, owing to the expiration of the terms of the incumbents, should have been, but were not, made on or before December 13, 1935.

The incumbents of the offices assumed to continue therein and the writ of quo warranto now before us was issued from the Court of Common Pleas No. 2 of Philadelphia County, at the relation of the district attorney to test their right to do so. It was stated in a petition to us that a like proceeding was about to be brought by the attorney general in the Court of Common Pleas of Dauphin County, and we were requested to remove by certiorari the proceedings already brought and to assume original jurisdiction. This we did and permitted the attorney general to intervene as coplaintiff with the district attorney.

In an amended suggestion filed by the attorney general, it is set forth that the city treasurer, owing to the failure of the auditor general to confer with him upon the appointments of mercantile appraisers on December 13, 1935, had appointed five persons to fill such offices for terms of four years each, who had duly qualified. It is too plain for argument that the city treasurer alone had no power to make appointments. The act of assembly prescribes that the appointments shall be made jointly by him and the auditor general. The alleged appointments thus made by the city treasurer were void and of no effect.

The question then is were the offices vacant or do the incumbents hold over? Every reason of public policy and public interest speaks against vacancies in the offices. These officials exercise very important governmental duties. Mandatory statutes require thousands of establishments in Philadelphia to be licensed by the State through these appraisers in order to carry on business during the year 1936. They include all mercantile establishments, wholesale as well as retail, all auctioneers, brokers, factors, commission merchants, real estate brokers, places of amusement, billiard rooms, bowling

alleys, restaurants, manufacturers and venders of patent medicines. It is stated that more than 60,000 persons and corporations are to be licensed. For operating without a license persons are liable to criminal prosecution. In the issuance of the licenses the mercantile appraisers must take the first step. They make the assessment or appraisement on the basis of which the license fee is determined. The procedure is now in progress and must be proceeded with or serious results to business will follow and large revenues will be lost to the State. The five mercantile appraisers sitting as a board hear all appeals from appraisements. All persons subject to the mercantile tax must obtain their licenses not later than May 1, 1936. No other agency of the State is authorized by law to take over the work or assume the functions of the mercantile appraisers. From this recital the public interest and importance of the matter will be seen.

What is the law, therefore, in the situation which existed when the auditor general and city treasurer failed to make the appointments on December 13, 1935? We were and are unhesitatingly of the opinion that the then incumbents continue in office until their successors are duly appointed according to law.

There is no appellate court decision in this State on the question we are considering. However, at common law, and Pennsylvania is still and it is hoped always will be a common law State, the rule is that the incumbents of offices whose terms have expired continue in office until action is taken by the appointing power in accord with the law. This principle was fully investigated and reviewed by the Supreme Court of California in *Stratton v. Oulton*, 28 Cal. 44. As pointed out in that opinion the reason for the rule is because government cannot properly function without necessary officers. As we have before stated, the officers here in question are most necessary to the proper functioning of government.

In *Robb v. Carter*, 65 Md. 321, 4 Atl. 282, the common law principle was recognized and applied in the case of the city solicitor of Baltimore. There was no provision in the ordinance providing for his appointment that he should hold until the appointment and qualification of his successor. The mayor nominated the then city solicitor to succeed himself, but the nomination was rejected by city council. The solicitor continued to perform the duties of the office and claimed salary for the time that he occupied it after his appointive term expired. In holding that he was entitled to the salary, the Court of Appeals of Maryland pointed out that any other than the common law ruling "might cause a vacancy in nearly every office, and a suspension of business in the various departments of the municipality."

In *State ex rel. Guernsey v. Meilike*, 81 Wis. 574, 51 N. W. 875, the principle was applied and the incumbent of an office was held entitled to continue in it where there was a deadlock in the selection of his successor. The unquestioned weight of modern authority holds that where an officer is appointed or elected for a specified term, he continues to hold over until his successor has qualified, unless there is an express legislative mandate to the contrary: *People ex rel. Mateer v. Morrell*, 234 Ill. 47, 84 N. E. 644; *Jones v. Roberts Co.*, 27 S. D. 519, 131 N. W. 861; *State ex rel. Eberle v. Clark*, 87 Conn. 537, 89 Atl. 172; *Walker v. Hopping*, 226 S. W. 146 (Tex.); *State ex rel. Pluntz v. Johnson*, 176 Wis. 107, 186 N. W. 729; *State ex rel. Rogers v. Johnson*, 135 Wash. 109, 237 Pac. 12; *State ex rel. Sandquist v. Rogers*, 93 Mont. 355, 18 Pac. (2d) 617; *State ex rel. Stain v. Christensen*, 84 Utah 185, 35 Pac. (2d) 775. In *State ex rel. Rogers v. Johnson*, 135 Wash. 109, 113, 237 Pac. 12, the Supreme Court of the State of Washington in passing upon the question before us said: "The courts generally indulge in a strong presumption against a legislative intent to create by statute a condition which may result in an executive or administrative office becoming,

for any period of time, wholly vacant and unoccupied by one lawfully authorized to exercise its functions. . . . The rule of law is that an officer shall hold office until his successor is appointed and qualified, unless by the language of the statute such holding over is expressly or by clear implication prohibited." *Com. ex rel. v. Glass*, 295 Pa. 291, cannot be deemed an authority on the question we are considering, first, because that controversy involved a judicial office, and as to such the common law rule is different from that applied to other offices, and, secondly, because of the unusualness of its facts and their total lack of relation to those here involved. However, in that opinion we pointed out that the public interest cannot be permitted to suffer by the failure to fill an office and that the acts of an officer functioning after the expiration of his term could be sustained as those of a de facto officer. *Com. ex rel. v. Sheatz*, 228 Pa. 301, involved a constitutional office, that of state treasurer, and we held that as the Constitution specified a definite term for the state treasurer without providing that he should serve until his successor had qualified, it was not within the power of the legislature to extend the constitutional term. The officers here involved are not constitutional officers.

The foregoing was prepared in accordance with our original order of January 8, 1936, as our opinion on the question which was submitted to us, the right of the defendants to continue in office until their successors were duly appointed according to law. On March 13, 1936, while the case was pending and before the opinion could be handed down, and without any application being made to us, the auditor general and city treasurer proceeded to name one of the incumbents and four other persons to the offices. Thereupon we issued an order that the defendants shall continue to act as mercantile appraisers until this court shall render its opinion in the case and that those persons named by the auditor general and city treasurer shall not interfere in any way

with the performance by the defendants of their duties and that a rule be granted calling upon the auditor general and the city treasurer to show cause why the defendants should not continue in the performance of their duties as mercantile appraisers, the rule to be returnable on a day named, the case to be set down for supplemental argument after the return date of the rule upon the question whether the auditor general and the city treasurer have the power to appoint any persons as mercantile appraisers in cities of the first class after December 13th of each fourth year after 1919, or the power to remove such mercantile appraisers during their terms as fixed by law. To this rule separate answers of the auditor general and city treasurer were filed and the matter has again come before us and been argued on the additional questions involved.

The original order which we made was in the nature of a mandate to the parties not to disturb the status quo without recourse to us and until our opinion had been rendered. Our opinion was part of the mandate: *Gulf Refining Co. v. U. S.*, 269 U. S. 125, 130; *Metropolitan Water Co. v. Kaw Valley Dist.*, 223 U. S. 519. The case as originally presented called for the interpretation by us of the meaning of the Act of 1919 and involved not only the question whether the city treasurer alone could make appointments, but also the right of the defendants to serve after December 13, 1935, because of the failure of the two appointing officers jointly to make new appointments on or before that date. The status of litigation may not be changed pending the decision of the court in which the status is to be determined: *Dovey's App.*, 97 Pa. 153; *Bennett, Lis Pendens*, sections 78, 253. " 'A lis pendens is the jurisdiction, power or control which courts acquire over property involved in a suit, pending the continuance of the action, and until its final judgment therein': 17 *Ruling Case Law* 1008"; *Bungar v. St. Michael's Greek Catholic Church*, 272 Pa. 402, 404. While strictly speaking the situation here is not one of

lis pendens, the reasons which give rise to that doctrine do and should operate to protect the courts in their control of litigation pending before them. In *Com. ex rel. v. Dieffenbach*, 3 Grant 368, which was a proceeding in quo warranto and in which persons claiming to be trustees of a church made a lease for the church property while the suit was pending, it was held that the lessee must get out of possession until the contest over who were the trustees should be finally determined. In *Cook v. Mozer*, 108 Ohio 30, 140 N. E. 590, it was decided that the doctrine of lis pendens is part of the general law of the land under the broad public policy of maintaining the status quo of rights and interests in property involved in litigation, not only as between the parties thereto but as to third parties, until the action pending has been finally adjudicated. In *Heckmann v. Detlaff*, 283 Ill. 505, 119 N. E. 639, it was held that the court having jurisdiction of a suit is entitled to proceed to the final exercise of that jurisdiction and it is beyond the power of any of the parties to prevent its so doing by any transfer or other act made or done after the service of the writ. In *Moore v. Zelic*, 338 Ill. 583, 170 N. E. 664, it was said that the doctrine is based on questions of public policy and convenience as necessary to the administration of justice in order that decisions in pending suits may be binding and of full effect and that an end be had to litigation. In *Guaranty State Bank v. Pratt*, 72 Ok. 244, 180 Pac. 376, the court said, quoting from *St. John v. Strauss*, 60 Kan. 136, 55 Pac. 845, that the theory of lis pendens is to keep the subject-matter or controversy within the power of the court so that the final judgment when rendered may be effective. In principle there is an analogue between the situation here presented and that which is present with the court of first instance, where the record has been removed to an appellate court. "At common law, a court of first instance was without jurisdiction to proceed with a cause after the record thereof had been removed to an appellate

court . . . for the obvious reason that it had no record upon which it could proceed": *Gilbert v. Lebanon Valley St. Ry. Co.*, 303 Pa. 213, 218.

We are of opinion that there is a broad principle of public policy involved which may be stated thus: When the judicial branch of the government is called upon to adjudge the rights and powers of another branch of the government, all of the officers involved should recognize the prerogatives of the court, and should not, without requesting and receiving its sanction, undertake to disturb the status quo until the court has rendered its decision. We acquit the auditor general and city treasurer personally of any intention to contemn the prerogatives of the court and quite readily believe that the action which they took in naming the new officers was mistakenly taken and without any intention upon their part to act in a way which could not meet with the court's approval. We conclude, however, that their action taken while the case was sub judice was a nullity and that no rights were acquired to the offices by those whom they appointed on March 13th.

The several interesting questions which are raised by the case were ably presented to us by the counsel engaged, but we think not all of them need be discussed or commented upon for the reason that after mature consideration, we have concluded that one of them is controlling. That one arises out of article VI, section 4, of the Constitution, which provides: ". . . Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed. . . ." We recently had occasion to consider this section of the Constitution in *Com. ex rel. v. Hiltner*, 307 Pa. 343, and said that this language is clear and unequivocal. In *Georges Twp. School Directors*, 286 Pa. 129, we decided that the constitutional method of removal is exclusive and prohibitory of any mode which the legislature may deem better or more

convenient. In *Finley v. McNair*, 317 Pa. 278, we gave further consideration to the section. With the provision again before us, we conclude that it is controlling in the present controversy and that the auditor general and city treasurer have the power to remove the defendants or any of them from office and to appoint for the remainder of the four-year term such others as they may desire in their stead. On the familiar principle stated, however, that power could not be exercised while the litigation was pending in this court.

Petition dismissed.