RAFAEL A. GONZÁLEZ, peticionario, *v.* CORTE DE DISTRITO DE SAN JUAN, HON. R. CORDOVÉS ARANA, JUEZ, demandada.

Núm. 1525.—*Sometido:* Mayo 25, 1943. *Resuelto:* Junio 2, 1943.

F. *Fernández Cuyar,* H. S. *McConnell,* E. *Córdova Díaz* y H. *González Blanes,* abogados del peticionario; *Samuel R. Quiñones, F. Ochoteco, Jr., F. García Quiñones* y *Justo A. Casablanca,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Este caso requiere la determinación de una cuestión que todavía no ha sido resuelta en esta jurisdicción. ¿Tiene un juez municipal, cuyo término de cuatro años vence mientras el Senado está en. receso, tal título el cargo de forma que no existe vacante alguna de dicho cargo, que impida por tanto al Gobernador hacer un nombramiento de receso a favor de una persona distinta?

El caso llegó ante nos de una manera excepcional. Alegando que tiene un título válido al cargo de juez municipal

de San Juan, el 20 de mayo de este año, Rafael A. González radicó ante la corte de distrito una petición de *injunction* contra Manuel Orraca Torres, solicitando se ordenara permanentemente a este último que no interviniera con su posesión del referido cargo hasta que se estableciera de conformidad con la ley quién tenía un título legal al mismo. La petición contiene la siguiente alegación:

"3. El querellado alega tener título al cargo aludido de Juez Municipal de San Juan, Sección Primera, y con tal motivo se ha personado en el día de hoy en el salón de sesiones de dicha corte, desde las 7:30 de la mañana, sentándose en los estrados de dicha corte, y amenazando abiertamente al peticionario con impedirle, mediante la fuerza y la violencia, el ejercicio de las funciones de su cargo, perturbándole así en la posesión del mismo y valiéndose para ello de miembros de la Policía Insular, a quienes ha ordenado impidan por la fuerza y violencia la entrada al salón de la Corte, del peticionario, quien aún retiene la posesión de sus oficinas en dicha Corte y a quien el querellado pretende impedir que celebre los juicios señalados para el día de hoy y cumpla con todos los demás deberes judiciales del aludido cargo, cuyo cumplimiento ha de verificarse por el peticionario en el día de hoy."

Asimismo, en la petición solicitaba se dictara un *injunction* preliminar y una orden de entredicho. La corte de distrito expidió una orden para mostrar causa, señalándola para vista, en cuanto al injunction preliminar, pero rehusó expedir la orden de entredicho. Dada la naturaleza de la controversia y el interés público en que se decida rápidamente la cuestión de derecho envuelta en este caso, expedimos un auto de *certiorari,* de acuerdo con la Ley núm. 32, aprobada el 3 de mayo de 1943 (pág. 85) con el fin de revisar la resolución no apelable de la corte de distrito negándose a expedir la orden de entredicho.

De acuerdo con la sección 49 del Acta Orgánica, los jueces municipales son nombrados por el Gobernador con el concurso y consentimiento del Senado (Título 48 U.S.C. Sección 873). Pero de acuerdo con la sección 26 tales nombramientos pueden ser hechos sólo por el Gobernador cuando

el Senado no esté en sesión, para tener efectividad hasta que sean desaprobados por el Senado o hasta que éste declare terminado su próximo período de sesiones (Título 48 U.S.C. Sección 812). Orraca tiene un nombramiento de juez municipal, expedídole por el Gobernador durante el actual receso del Senado, después de haber expirado el 25 de abril, el término de cuatro años que tenía González para dicho cargo. Desde luego, para que este nombramiento sea válido tiene que haber una vacante en el cargo en cuestión, a la fecha en que se le nombró. Orraca afirma que había tal vacante por el fundamento de que al expirar el término de cuatro años de González el 25 de abril, surgió automáticamente una vacante en el cargo.

Parece que no hay lugar a desacuerdo en cuanto a ciertas consideraciones preliminares de derecho. Al posponer temporalmente la discusión del posible efecto del artículo 169 del Código Político, encontramos a las autoridades que sostienen casi unánimente que el vencimiento de un término fijo en un cargo, por sí solo, no impide que el incumbente siga *holding over,* desempeñando los deberes y recibiendo el sueldo de dicho cargo, aun en ausencia de la cláusula familiar que frecuentemente se añade a las disposiciones estatutarias y constitucionales que fijan los términos de los cargos; es decir, que el término será por un período fijo "y hasta que, su sucesor sea nombrado y calificado". En verdad, los casos resuelven que, a pesar de la ausencia de dicha cláusula, tal funcionario público no solamente tiene el derecho, si que es su deber, continuar actuando en tal capacidad. Los casos se fundan en la doctrina de que la ley aborrece las vacantes que podrían muy bien entorpecer importantes servicios públicos. Para impedir un paro en las actividades gubernamentales mientras se hacen nuevos nombramientos o renominaciones, las cortes, con raras excepciones, han declarado válidas por tanto las actuaciones realizadas durante dicho interregno por funcionarios *holding over* sin autoridad expresa estatutaria o constitucional para ello.

164

(*People ex rel. Warren et al.* v. *Christian et al.*, 123 P. (2d) 368 (Wyo., 1942) ; *Benson* v. *Mellor,* 137 Atl. 294 (Md., 1927) ; *Commonwealth* v. *Kelly,* 185 Atl. 307 (Pa., 1936)).

Tomando dichos casos como punto de partida, González argumenta, a pesar de que su término de cuatro años según fué fijado por ley (Art. 1176, Estatutos Revisados de 1911, pág. 266) ha expirado, y de que los estatutos que crearon su cargo no contienen la cláusula familiar de *holding over* antes mencionada, que por inferencia de ley puede y debe actuar hasta que su sucesor sea nombrado y calificado, que significa, nombramiento por el Gobernador con el consejo y consentimiento del Senado; y que el período durante el cual él está así *holding over* forma parte del término de su cargo considerándose prorrogado en efecto legal el término del cargo original ya expirado hasta el período de tiempo en que actúe *holding over*. De prevalecer esta contención de González no puede haber duda de que, al no cesar en el cargo por otro motivo, no existe vacante que puede el Gobernador sólo cubrir válidamente mediante un nombramiento de receso, y que González cesaría en el cargo solamente cuando el Senado confirme el nombramiento hecho por el Gobernador a favor de su sucesor, y hasta que éste califique.

Al analizarlos, las verdaderas resoluciones de los casos pertinentes, aparte de las excepciones que se indicarán, no conllevan doctrina tan amplia. En todos ellos, con raras excepciones que más adelante se discutirán, la cláusula familiar de *holding over* se encuentra en el estatuto o constitución que se interpreta.([1]) Convenimos sin vacilación en que bajo tales circunstancias ''el período de *holding over* es parte del término del cargo y el incumbente es un funcionario *de*

---

[1] *People ex rel. Emerson* v. *Shawver*, 222 Pac. 11 (Wyo., 1924) ; *State* v. *Brown*, 274 S. W. 965 (Mo., 1925) ; *State ex rel. Standish* v. *Boucher*, 21 L.R.A. 539 (N. D., 1893) ; *Sweeney* v. *State*, 204 Pac. 1025 (Ariz. 1922) ; *Stephenson* v. *Powell*, 150 S. E. 641 (Ga., 1929) ; *State* v. *Bird*, 163 So. 248 (Fla., 1935) ; *State* v. *Tazwell*, 111 P. (2d) 1021 (Ore., 1941) ; *State* v. *Caulk*, 138 Atl. 354 (Del., 1927) ; *State* v. *Stafford*, 34 P.(2d) 372 (Mont., 1934) ; *Schackelford* v. *West*, 74 S. E. 1079 (Ga., 1912).

*jure."* (*Attorney General ex rel. McKenzie* v. *Warner,* 300 N. W. 63 (Mich., 1941)), y que "El derecho de actuar *holding over* bajo esta disposición es tan parte del término del cargo como el mismo período regular fijado por estatuto". (*People ex rel. Warren et al.* v. *Christian et al.,* supra). Al mismo efecto, *Territory ex rel. Klock* v. *Mann,* 120 Pac. 313, 15 (N. M., 1911). Es decir, en dichos casos la Legislatura, previendo que los términos de algunos funcionarios expirarían mientras el Senado está en receso, dispuso por mandato estatutario específico que se prorrogaran dichos términos hasta que sus sucesores fueran nombrados con el consejo y consentimiento del Senado. Por tanto, no puede haber disputa alguna en cuanto a la teoría de que un funcionario que actúa bajo un estatuto de esta naturaleza está actuando *holding over* con título legal al cargo y que en su consecuencia no existe vacante en dicho cargo. Es evidente que el estatuto tiene dos propósitos: (1) retener en todo momento en el cargo a una persona que ha sido nombrada con el consejo y consentimiento del Senado, incluyendo el período después de que su término ha expirado, hasta que el Senado pueda reunirse y concurrir con el Gobernador en volverlo a nombrar o elegir su sucesor; (2) evitar vacantes que la ley aborrece, toda vez que entorpecen la continuación de la administración de los asuntos públicos.

Pero cuando pasamos a considerar los funcionarios que están *holding over* en los cargos que por estatuto tienen señalado en término fijo sin el beneficio de la cláusula familiar de *holding over,* la situación es diferente. Es axiomático que las cortes casi universalmente han incluído por inferencia en tales estatutos disposiciones judiciales que exigen que dichos funcionarios continúen desempeñando sus deberes y que legalizan tales actos. Pero esta doctrina está basada en la necesidad pública de evitar un colapso temporal en el Gobierno. En resumen, tal actuación judicial se debe al segundo de los propósitos antes mencionados—que la ley aborrece las vacantes—y no al primero.

Esto se hace más evidente cuando exploramos la distribución de poderes hecha por la constitución y los estatutos en relación con los nombramientos. El poder de nombramiento no es inherente el cargo de Gobernador. A ese respecto sólo tiene tales poderes como específicamente se le otorgan por la ley, orgánica o estatutaria. (*People ex rel. Warren et al.* v. *Christian et al.*, supra; *Heyward* v. *Long,* 183 S. E. 145 (S. C., 1935)). En los gobiernos federal, estatal e insular, se pensó que sería sabio disponer que muchos nombramientos, incluyendo los ejecutivos, estarían sujetos a la confirmación del Senado. Cuando tales nombramientos se hacen, representan la acción conjunta del Gobernador y del Senado. Es por tanto altamente importante que el incumbente de un cargo goce del sello de aprobación de estas dos ramas del Gobierno. Con estas consideraciones en mente, nos parece claro que cuando la Legislatura dispuso específicamente que un incumbente actuaría por cuatro años, y hasta que su sucesor fuere nombrado y calificado, la intención legislativa ha sido expresada al efecto de que, una vez que una persona ha sido confirmada bajo tal estatuto, continuará en el cargo y poseerá un título legal sobre el mismo hasta que el Senado actúe sobre la nominación de su sucesor. Ése es el propósito primordial de la cláusula, aunque conlleva también el importante efecto de evitar dificultades administrativas como resultado de vacantes en los cargos. Por tanto es fácil comprender cómo los casos han resuelto que bajo tal estatuto un funcionario *holding over* continúa disfrutando de un título legal al cargo.

Pero cuando un estatuto fija el término de un cargo y guarda silencio en cuanto a *holding over,* no encontramos mandato legislativo alguno de que la persona a quien el Senado ha confirmado deba continuar en su cargo después de haber expirado su término y que mientras actúa *holding over* gozará de título legal al cargo. Por el contrario, la Legislatura ha dejado una laguna que podría tener fatales conse-

cuencias en la administración a menos que las cortes vinieran en su rescate y resolvieran que las actuaciones de tales funcionarios son válidas, llevando a efecto el segundo de los propósitos referidos, es decir, conseguir la continuidad de las funciones gubernamentales. Las cortes han hecho esto. Pero al actuar así, las cortes meramente suplieron el modo práctico de vadear la laguna (*stop gap*). No pueden resolver por inferencia que la Legislatura específicamente dispuso el que hubiera título legal durante el período de *holding over*, cuando la Legislatura optó por guardar silencio sobre la cuestión. Afirmar que una persona que permanece *holding over* bajo un mandato legislativo específico a ese efecto puede actuar válidamente y goza de un título legal sobre su cargo, mientras que otro que permanece *holding over* sin tal disposición estatutaria puede actuar válidamente pero no goza de título legal sobre su cargo, no es querer trazar una diferencia entre dos gotas de agua. Es evitar la dificultad práctica que podría surgir de cargos vacantes, pero al mismo tiempo cumpliendo la intención legislativa de cuándo está un cargo legalmente vacante, en contraste con el desempeño ininterrumpido de sus funciones. Estamos dispuestos a declarar válidas las actuaciones de un funcionario cuyo término ha expirado, pero que ha continuado actuando debido a que nadie lo ha reemplazado legalmente. No podemos dar el paso adicional de incluir en el estatuto lo que éste no contiene—que su término legal en el cargo cubre el período de tiempo en que actúa *holding over* hasta que su sucesor ha sido elegido debidamente.

Se argumenta que la Carta Orgánica ha conferido el poder de nombramiento conjuntamente al Gobernador y al Senado, y que de permitir nosotros que el Gobernador sustituya por medio de un nombramiento de receso a favor de otra persona a una persona ya confirmada por el Senado, sería derogar la participación del Senado en tales nombramientos. No podemos aceptar este argumento. Lejos de disminuir las prerrogativas del Senado, el resultado a que

llegamos se encamina exclusivamente a la intención de la Legislatura. Si ésta prefiere sostener en su cargo a una persona a quien una vez confirmó pero cuyo término ha expirado, hasta que pueda pasar sobre su nuevo nombramiento o sobre el nombramiento de su sucesor y evitar con ello que el Gobernador lo sustituya haciendo un nombramiento de receso provisional, solamente tendría que añadirle al estatuto que fija el término del cargo la cláusula familiar ''y hasta que su sucesor sea nombrado y calificado''. Muchos estatutos así lo disponen. Dichas palabras no están de más. Tienen propósito y significado definidos. El peticionario solicita que lleguemos al mismo resultado en ausencia de tal estatuto. No podemos hacer eso. A la Legislatura corresponde la elección, y a ella se la dejamos.

Durante la vista oral surgió la cuestión en cuanto a cómo podíamos resolver, como resolvemos, que González podía actuar válidamente, después de haber expirado su término, como un funcionario *holding over,* e inmediatamente declarar que existía una vacante en el cargo. Creemos que la contestación a esta pregunta se infiere de lo que hemos dejado expuesto. Es decir, González no ocupa el cargo en el sentido legal, técnico; solamente ejerce las funciones del cargo por la conveniencia pública. Existe una vacante legalmente, y una vez que sea cubierta debidamente, lo cual puede hacer el Gobernador por sí sólo cuando el Senado está en receso, desaparece la necesidad imperativa de que González deba continuar actuando y debe echarse a un lado. Desde luego, no existe requisito mandatorio alguno de que el Gobernador actúe. Si no actúa, González continúa *holding over* y sus actuaciones oficiales son válidas. Pero una vez que el Gobernador actúa, la vacante está cubierta, por lo menos temporalmente. Algunos de los casos que se indicarán más adelante usan la fórmula de que González bajo las circunstancias de este caso es un funcionario *de facto,* que no existe un funcionario *de jure* en ausencia de la cláusula familiar de *holding over,* y que estando el cargo *de jure* vacante, el Go-

bernador puede hacer un nombramiento de receso para el mismo. Reconocemos que al llamar a González un funcionario *de facto* se está en efecto exponiendo una conclusión, en vez de aducir las razones para llegar a la misma. Pero estando conformes en cuanto a la corrección de la conclusión, creemos conveniente, como lo han hecho otras cortes, adoptar tal designación como una caracterización breve del *status* de un funcionario bajo la situación ·de hechos con que nos confrontamos. En verdad, puede notarse que aun la· cuestión de la vacante es algo metafísica. Supongamos, por ejemplo, que el Gobernador ha elegido no actuar, y ha esperado hasta la próxima sesión del Senado para someter a éste el nombramiento del sucesor de González. ¿En qué momento es que ocurre la vacante? ¿Cuando el Gobernador nomina, el Senado confirma, el Gobernador expide el nombramiento o el nuevo funcionario califica? Es inútil especular sobre estos extremos en la solución de problemas prácticos de gobierno. Una persona sale y la otra, ocupando su puesto, cubre la vacante. Insistir en cualquier razonamiento ulterior sería enfrascarnos en ejercicio mental dentro de una atmósfera muy rarificada para las cortes.

Hay un argumento un tanto ingenioso que podría traerse contra la idea de dar a la cláusula familiar de *holding over* el significado que le hemos atribuído. El argumento consiste en que la frase "hasta que su sucesor sea nombrado y calificado" significa hasta que su sucesor sea nombrado, bien durante un receso o por un término fijo debidamente confirmado; que el Gobernador por tanto pudo otorgar a Orraca válidamente un nombramiento de receso el 26 de abril, sustituyendo con ello a González; que en su consecuencia existe una vacante desde el 26 de abril; y que toda la teoría expuesta anteriormente cae por tanto por su propio peso, toda vez que el resultado definitivo a que se llega mediante tal razonamiento, al efecto de que existe una vacante cuando un incumbente actúa *holding over* de acuerdo con una cláusula específica de *holding over*, estaría en pugna con nuestra con-

clusión anterior de que cuando existe una cláusula de *holding over,* un incumbente que así actúa tiene título legal al cargo y que en su consecuencia no existe vacante alguna en el mismo. Nuestra contestación debe ser que éste es un razonamiento dentro de un círculo que por sí mismo demuestra que la premisa en que se basa—que "hasta que su sucesor sea nombrado y calificado" incluye nombramiento de receso así como los permanentes—no puede aceptarse. No hemos encontrado autoridad alguna que decida o que insinúe que una cláusula de *holding over* está dirigida tanto a nombramientos de receso del sucesor como a nombramientos permanentes. Por el contrario, en los casos que hemos examinado se encuentra la doctrina implícita de que esta cláusula específica se refiere sólo a nombramientos permanentes. En verdad, no entendemos que el peticionario alegue lo contrario. Y esto tiene necesariamente que ser así, ya que el Gobernador deriva su poder para hacer nombramientos de receso de una cláusula enteramente diferente para un propósito enteramente diferente. En contraste, la disposición de *holding over,* hablando en términos generales, se encuentra *inmediatamente* después del término del cargo—el incumbente, dicen los estatutos, ocupará el cargo por un período de cuatro años y hasta que su sucesor sea nombrado y calificado. Concluímos que el nombramiento a que se refiere tal cláusula específica de *holding over* es solamente el nombramiento permanente de un sucesor.

Debe confesarse que los casos en otras jurisdicciones descansan tan fuertemente en peculiaridades locales de estatutos y constitución y en la diferencia entre funcionarios electivos y por nombramiento, que es difícil determinar cuán persuasivos son en nuestro caso. Además, las autoridades están divididas en lo que se refiere a la cuestión específica ante nos. Sin embargo, creemos beneficioso que examinemos algunos de los casos.

El caso de *Alcorn* v. *Keating,* 181 Atl. 340 (Conn., 1935), llega a la misma conclusión a que hemos llegado nosotros.

Dicho caso envolvía el nombramiento de uno de los miembros de la Junta Estatal de Finanzas y Control. La corte dijo, a las págs. 341, 42:

"En su sentido elemental y técnico, la palabra 'vacante', al aplicarse a un cargo o puesto, significa la condición de no estar cubierto u ocupado por un incumbente actual. No debe, sin embargo, tomarse en este sentido estricto en todos los casos. Puede suceder que a los efectos de constituir la vacante a que se hace referencia en una disposición constitucional o estatal y la cual se autoriza a cubrir en la forma allí descrita, no sea necesario que el puesto esté físicamente vacante, sino que basta que no esté ocupado por un funcionario *de jure*. El término 'vacante', cuando es usado en esa forma, 'es aplicable tanto a un cargo ocupado por un usurpador o *por un funcionario de facto o que está 'holding over'*, como a aquellos casos en que por razón de muerte o renuncia, el cargo queda sin incumbente alguno.' *State ex rel. Eberle* v. *Clark*, 87 Conn. 537, 547, 89 A. 172, 175, 52 L.R.A. (N. S.) 912.'' (Bastardillas nuestras.)

La corte entonces cita con aprobación, de *State ex rel. Lyons* v. *Watkins*, 89 A. 178 (Conn., 1913), lo siguiente, que aparece a la página 342:

". . . . la cuestión es si el anterior incumbente continúa en posesión del cargo como parte de su término original o si solamente permanece en él como un simple *locum tenens* o funcionario *de facto*. En algunos de estos casos se resuelve que la disposición en cuanto a *holding-over* crea un término nuevo y eventual; en otros, que simplemente autoriza al funcionario anterior a cubrir temporalmente el cargo, de acuerdo con su antigua calificación, como un *locum tenens;* y en otros se resuelve que prolonga el término original hasta que se designe al sucesor. Cuando se decide que el término anterior continúa, generalmente se resuelve que no existe vacante alguna a ser cubierta por la autoridad investida del poder para cubrir tales vacantes; y, cuando el incumbente continúa en posesión del cargo temporalmente, se resuelve generalmente que existe una vacante que puede ser cubierta por quien esté autorizado a cubrirlas. En todos los casos la cuestión es una de interpretación de la disposición que autoriza el *holding over*, y ésta es afectada por la naturaleza del cargo a cubrirse (v. g., bien electivo o por nombramiento), por el lenguaje del estatuto en particular, y por las circunstancias que rodean el caso específico.''

La corte indica entonces, a las págs. 342, 3, los dos aspectos de la regla:

"Se ha decidido generalmente que cuando la disposición es al efecto de que el incumbente ocupará el cargo hasta que su sucesor haya sido electo o nombrado y calificado, en ausencia de otras disposiciones o consideraciones que la modifiquen o la afecten, no hay vacante alguna a ser cubierta en la forma provista para llenar las vacantes por otra persona que no sea la que tiene poder para ello y en la forma originalmente autorizada para elegir o nombrar.

" *       *       *       *       *       *       *

"En ausencia de una disposición definitiva de que un funcionario ocupará el cargo no sólo durante el término específico sino que también hasta que su sucesor sea electo o nombrado y calificado, cuando se ha decidido que el incumbente tiene derecho a actuar *holding over* hasta que se elija su sucesor, generalmente se le considera como funcionario *holding over de facto* solamente, de manera que su ocupación del cargo no impide la existencia de una vacante a ser cubierta por la autoridad con poderes para ello. *State ex rel. Lyons* v. *Watkins*, supra, 87 Conn. 592, págs. 598, 600, 89 A. 178; *State ex rel. Eberle* v. *Clark*, supra, 87 Conn. 537, pág. 547, 89 A. 172, 52 L.R.A. (N. S.) 912; 46 C. J. págs. 968, 1058, y casos citados; 22 R.C.L. pág. 598; Mechem, *Public Officers*, §129, pág. 64."

En el caso de *Heyward* v. *Long,* 183 S. E. 145 (S. C., 1935), se trata extensamente este problema, afirmando la corte a la pág. 151 que "La regla general es que una persona que actúa *holding over* después de haber vencido su término legal, cuando no existe disposición de ley alguna en cuanto a *holding over,* se considera generalmente como un funcionario *de facto.* 46 C. J. 1058; *State* v. *McJunkin,* 7 S. C. 21; *Williams* v. *Boynton,* 147 N. Y. 426, 42 N. E. 184; *In re Lieutenant Governorship,* 54 Colo. 166, 175, 129 P. 811; *State* v. *Watkins,* 87 Conn. 594, 89 A. 178; *People* v. *Beach,* 77 Ill. 52; *In re Krickbaum's Contested Election,* 221 Pa. 521, 70 A. 852." Véase también, *Smith* v. *City Council of Charleston,* 17 S. E. (2) 860, 63 (S. C., 1941).

En *People ex rel. Sergel* v. *Brundage,* 129 N. E. 500 (Ill., 1920), la corte resolvió, en relación con la elección del pre-

sidente de la junta de síndicos de un distrito sanitario, que (pág. 503) "No existe significado técnico de la palabra 'vacante', pero la regla del derecho común, cuando no ha sido modificada mediante estatuto, es que existe una vacante al expirar el término. *Badger* v. *United States,* 93 U. S. 599, 23 L. Ed. 991. En muchos casos los estatutos disponen que un funcionario puede actuar *holding over* después de la expiración de su término hasta que su sucesor sea electo y calificado, y la ley contiene tal disposición en cuanto a los síndicos pero no en cuanto al presidente. Cuando un funcionario no está autorizado por estatuto a actuar *holding over,* sus derechos, deberes y autoridad como tal funcionario público cesan, y no estando legalmente calificado para ejercer los poderes y desempeñar los deberes del cargo, existe una vacante. Mechem *on Public Offices and Officers,* §§126, 396."

Al mismo efecto, *Brown* v. *Quintilian,* 184 A. 382 (Conn., 1936); *State ex rel. Smallwood* v. *Windom,* 155 N. W. 629 (Minn., 1915); *Commonwealth ex rel. Kelley* v. *Kelly,* 185 Atl. 307 (Pa., 1936). Véase también, Nota en 50 L.R.A. (N. S.) 365 y Anotación en 71 A.L.R. 848.

*People* v. *Pillman,* 1 N. E. (2d) 788 (Ill., 1936), va aun más lejos de lo que es necesario en el presente caso en tanto en cuanto resuelve, refiriéndose a un inspector electivo de un pueblo que (pág. 789), "Cuando un funcionario, así electo, desempeña el cargo a virtud de estatuto hasta que su sucesor sea electo y haya calificado, su ocupación temporal no impide que se declare el cargo vacante, y que sea cubierto por la autoridad competente para actuar en tal situación." Al mismo efecto, el caso de *State* v. *Young,* 68 So. 241 (La., 1915), después de escudriñar las autoridades, resolvió en una opinión iluminadora que aun una cláusula general de *holding over* de una constitución estatal no le impide al gobernador hacer un nombramiento de receso para sustituir a un funcionario *holding over.*

*Gosman* v. *State,* 6 N. E. 349 (Ind., 1886), resuelve que aun la cláusula familiar de *holding over* no autoriza a una

persona que constitucionalmente es inelegible para ocupar el cargo en exceso de ocho años que continúe *holding over* después de ocho años de servicio. Así lo resolvió la corte, a pesar de su conclusión de que de otra manera la cláusula familiar serviría para prolongar legalmente el término del incumbente, y que por tanto no existiría vacante alguna. De conformidad con los hechos, la corte en su consecuencia resolvió que existía una vacante. Pero también aquí, las autoridades están divididas. En *Jones* v. *Roberts County*, 131 N. W. 861 (S. D., 1911), la corte resolvió, contrario al caso de Indiana arriba citado, que un superintendente de escuelas de un condado que había servido cuatro años ininterrumpidamente, disponiendo la constitución del estado que ninguna persona será elegible para tal cargo después de haber servido cuatro años consecutivos, podía desempeñar los deberes de tal cargo y recibir remuneración por ello, hasta que su sucesor sea electo o nombrado y calificado, aun en ausencia de la cláusula familiar de *holding over*. La corte basó su decisión en la inferencia general que aborrece las vacantes. La corte, sin embargo, indica que el superintendente (pág. 863) "no [será] considerado en muchos aspectos un funcionario *de jure*". En *State ex rel. Sikes* v. *Williams*, 121 S. W. 64, 68 (Mo., 1909), se emplea lenguaje similar. "El derecho de un funcionario que así actúa *holding over* surge de la tolerancia, en vez de título intrínseco alguno al cargo."

Debe admitirse que el caso de *Benson* v. *Mellor*, 137 Atl. 294 (Md. 1927), es un caso idéntico que favorece totalmente la posición de González. Después de manifestar la regla general al efecto de que los incumbentes pueden actuar *holding over* hasta que sus sucesores hayan calificado, existiendo o no una disposición expresa para ello, a no ser que haya mandato expreso en contrario, la Corte de Apelaciones de Maryland, después de admitir que ha habido declaraciones en conflicto en las decisiones de Maryland, llega a la conclusión que sostiene el peticionario. La corte afirma que el

*holding over* es (pág. 298) "el cubrir un cargo impidiendo una vacante", y dice "Parece que no hay distinción en cuanto a este respecto entre *holding over* bajo autoridad expresa y *holding over* sin tal autoridad; el *holding over* en cada caso es de la misma naturaleza, y su efecto y consecuencias parecen ser los mismos." La corte agrega entonces el punto ya indicado al efecto de que el período adicionado de *holding over* es "de hecho, parte del término legal del cargo."

Sin embargo, la corte no examina en modo alguno en detalle o de alguna otra manera, la teoría ya indicada que distingue entre *holding over* bajo una cláusula específica que prolonga el término, frente al *holding over* sin que exista tal cláusula la cual por interpretación judicial dispone que se llene temporalmente la laguna. El caso de Maryland utiliza el argumento corriente contra las vacantes, pero la corte pasa por alto el hecho de que existe un remedio adecuado sin tener que recurrir al título legal sobre el cargo. En efecto el caso de Maryland sostiene que una cláusula tan importante como la de, "hasta que su sucesor sea nombrado y calificado" contenida en una constitución o en un estatuto está de más. No podemos estar conformes con tal conclusión. El caso de *Commonwealth* v. *Glass,* 145 Atl. 278, 81 (Pa., 1929), cita y expresamente rechaza el de *Benson* v. *Mellor,* llegando a la misma conclusión que nosotros en esta cuestión. No nos convence el caso de Maryland y preferimos seguir los de Connecticut, Carolina del Sur y Pensilvania. Llegamos a esta conclusión, aunque otros casos contienen insinuaciones similares. El caso de *State ex rel. Rogers et al.* v. *Johnson, Mayor,* 237 Pac. 12 (Wash., 1925), aunque no tan claro como el de Maryland debido a ciertas peculiaridades de la disposición estatutaria allí envuelta, parece indicar que no existe vacante si un incumbente actúa *holding over* después de la expiración de su término, aun en ausencia de la cláusula familiar de *holding over,* aunque admite que "no es la cuestión precisa" envuelta en dicho caso. *McGuirk* v. *State ex rel. Gottschalk,* 169 N.E. 521 (Ind., 1930),

que también parece ser contrario a la regla que adoptamos, descansa en un viejo caso de Connecticut (*Harrison* v. *Simonds*, (1877), 44 Conn. 318, 319), el cual, como hemos visto en el caso de *Alcorn*, actualmente no constituye la ley en Connecticut.

▉ Resta sólo indicar el posible efecto de dos artículos de nuestro Código Político. El artículo 169 (Estatutos Revisados, 1911, Sec. 2856, pág. 566), dice así:

"Por disposición del Gobernador y con la aprobación del Consejo Ejecutivo, todo funcionario o empleado continuará desempeñando su cargo, y tendrá derecho a la remuneración del cargo aunque hubiere expirado el término de éste, hasta que su sucesor haya tomado posesión."

Orraca alega que la omisión de cumplir con dicho artículo anula el derecho de González a actuar *holding over*. Aunque tal disposición fué aprobada cuando nuestra Carta Orgánica era la Ley Foraker, que disponía la existencia de un Consejo Ejecutivo, con poderes considerablemente diferentes a los de nuestro actual Consejo Ejecutivo, sin embargo, Orraca afirma que el artículo 169 está todavía en vigor. Resucitar este artículo del Código Político del limbo del olvido, daría lugar a algunas conclusiones sorprendentes. Si de acuerdo con la sección 26 de nuestra actual Carta Orgánica, se resuelve que el Senado ha heredado esta función del Consejo Ejecutivo anterior, el artículo 169 debe caer por estar en conflicto con las disposiciones de nuestra actual Carta Orgánica estableciendo un Senado con funciones exclusivamente legislativas y que se reúne sólo durante algunos días en el año, en contraste con el Consejo Ejecutivo bajo la Ley Foraker, que tenía una combinación de deberes legislativos y ejecutivos y se reunía casi constantemente. Resolver que ningún funcionario puede actuar *holding over* sin la aprobación del Senado tendería, como una cuestión práctica, a anular este *status*, excepto durante el limitado período en que el Senado esté en sesión. Tampoco podemos concluir que el

actual Consejo Ejecutivo desempeña esta función. Sin considerar el hecho de que el presente Consejo Ejecutivo no heredó bajo el Acta Jones o la función de confirmar nombramientos, que se trasfirió al Senado, o cualquiera de las funciones anteriormente ejercitadas por el antiguo Consejo Ejecutivo (Título 48, U.S.C. §777), hubiera sido enteramente ilógico para el Congreso el autorizar al Gobernador, como lo hizo por la sección 26 del Acta Orgánica, a hacer por sí solo un nombramiento de receso a favor de un nuevo incumbente, mientras que una disposición de ley como el artículo 169, que se ajustaba a condiciones pasadas pero no presentes, continuaba impidiendo al Gobernador el que dispusiera que un funcionario cuyo término ha expirado meramente actuará *holding over*, a menos que el Consejo Ejecutivo así lo aprobara. Parecería claro sin discusión ulterior que el artículo 169 dejó de existir con la derogación del Acta Foraker y la desaparición del Consejo Ejecutivo, tal cual estaba constituído bajo la misma.

Si resolviéramos que este artículo todavía está en vigor, no beneficiaría, desde luego, a González, toda vez que necesitaría la orden del Gobernador, que no se ha dado, aun si descartáramos por anticuada la necesidad de la aprobación del Consejo Ejecutivo, para que pudiera seguir actuando *holding over*, "hasta que su sucesor haya tomado posesión". Si la Legislatura sustituyera el artículo 169 con una cláusula verdadera de *holding over*, con operación automática y ajustada a nuestra actual Acta Orgánica, no habría duda de que los funcionarios *holding over* continuarían investidos de un título legal a sus cargos, y que los nombramientos de receso para reemplazarlos serían nulos por no existir vacantes en los cargos en cuestión. Pero la decisión en cuanto a si prefiere el *holding over* después de haber expirado los términos de los cargos, en vez de nombramientos de receso por el Gobernador solamente, continúa, repetimos, en manos de la Legislatura.

El artículo 208 del Código Político (Estatutos Revisados, 1911, Sec. 2895, pág. 572) no es de aplicación a los hechos de este caso. Este artículo dispone los casos específicos en que queda vacante un cargo *antes* de vencerse el período de su duración. Aquí la cuestión consiste en si existe una vacante *después* de la expiración del término de un incumbente, pero mientras éste continúa actuando *holding over*. Se ha resuelto que los términos de tal artículo no son necesariamente exclusivos y que puede decirse que ocurren vacantes de la clase aquí envuelta, a pesar de la existencia de tal artículo (*Toy* v. *Voelker*, 262 N. W. 881 (Mich., 1935)).

De paso nos damos cuenta que el Gobernador estaba autorizado para hacer, con anterioridad al cierre de la Legislatura el 15 de abril de este año, un nombramiento anticipado de cuatro años con el consejo y consentimiento del Senado para tener efecto el 26 de abril, el día después de expirar el término de González (*People ex rel. Warren* v. *Christian*, supra). Los casos sostienen tal acción, siempre y cuando que no ocurran cambios en la Gobernación y en el Senado entre la fecha en que se haga tal nombramiento anticipado y la fecha en que el nombramiento entre en vigor. Tal actuación hubiera evitado la cuestión levantada por el presente caso y hubiera otorgado al Senado la participación conjunta en tales selecciones que contempla la Carta Orgánica. Si la Legislatura en el futuro adoptara cláusulas genéricas o específicas en cuanto al *holding over* en la forma usual, el Gobernador estaría impedido de hacer nombramientos de receso de la naturaleza del de Orraca. Como hemos visto, tendría solamente la elección limitada de someter anticipadamente el nombramiento de cuatro años mientras el Senado está en sesión, o dejar que el incumbente permanezca legalmente desempeñando el cargo en calidad de *holding over* hasta que se confirme el nombramiento de su sucesor en la próxima sesión del Senado.

No necesitamos discutir la disputa existente en este caso en cuanto al significado legal de la palabra "calificado". La

calificación, que incluye la toma de juramento de un cargo, la prestación de una fianza y otros pasos similares, quiere decir el realizar tales gestiones posteriores al nombramiento, ya sea éste de receso o permanente. Lo que constituye la completa calificación no cae por tanto dentro de los límites de la presente controversia, que gira en torno a la validez del requisito que precede a la calificación—un nombramiento válido.

■ Pasamos a los aspectos procesales del caso. Como ya se ha indicado, este caso ha llegado ante nosotros de una manera poco acostumbrada. Éste no es el procedimiento corriente de *quo warranto* para determinar el título a un cargo público. Aquí tenemos un procedimiento de *injunction* para lanzar a Orraca de la posesión física de un cargo que, de acuerdo con las alegaciones de la petición, obtuvo de González, mediante violencia, estando éste *holding over* en dicho cargo, hasta que se determine de conformidad con la ley el título legal al cargo. Bajo tales circunstancias, cuando está en disputa el título sobre un cargo, generalmente interviene la equidad, no a los fines de resolver controversias en cuanto al título del cargo, sino para dilucidar la cuestión de la posesión (*Heyward* v. *Long*, supra). Aunque *Heyward* v. *Long, Ekern* v. *McGovern*, 142 N. W. 595 (Wis., 1913), y otros casos deciden, como alega el peticionario, que aun un funcionario *de facto* tiene derecho, mediante *injunction*, a la protección de su posesión física de un cargo hasta que se haya determinado la cuestión del título de conformidad con la ley, ningún resultado práctico se obtendría reinstalando a González en la posesión, en vista de nuestras consideraciones en cuanto a su alegado título legal sobre el cargo. Por el mismo fundamento, denegaremos la petición de *injunction* en auxilio de nuestra jurisdicción en este recurso de *certiorari*.

Ambas partes insisten en que decidamos en sus méritos dentro de este recurso de *injunction* la cuestión del título legal al cargo, bajo la teoría de que una vez que una corte de

equidad asume jurisdicción, tiene poder para resolver toda la controversia envuelta. (*Heyward* v. *Long*, supra). No estamos preparados para resolver que como una proposición general deberíamos permitir que se sustituya el recurso de *quo warranto*, que es el corrientemente apropiado en tales casos, por el de *injunction*. Pero en vista de las circunstancias especiales de este caso, y de conformidad con lo solicitado por las partes, pasaremos sobre la cuestión del título legal en este caso. En su consecuencia, resolvemos que Orraca tiene título legal al cargo en disputa.

Diremos algo en cuanto a las alegaciones de la petición de que Orraca, según se alega, tomó posesión del cargo a las siete y media de la mañana del 20 de mayo, y que retuvo dicha posesión mediante demostración de violencia. Orraca niega estas alegaciones. Toda vez que esta cuestión de hecho no ha sido litigada, no estamos en posición de considerarla. Sin embargo, creemos de interés público indicar que, si el incidente ocurrió como se alega, aquéllos que en él participaron deben ser censurados. La cuestión legal envuelta en este caso era nueva e importante. El Gobernador tenía todo derecho a dilucidarla extendiéndole a Orraca un nombramiento de receso. Éste último tenía todo derecho a requerir de González la entrega del cargo. Al negarse González a hacerlo, Orraca hubiera estado justificado en instituir procedimientos legales con el fin de obtener la adjudicación de su título al cargo y la posesión física del mismo. El procedimiento en casos de tanto interés público es suficientemente flexible y tiene muchos recursos, como demuestra vivamente el presente caso, para poder obtener una determinación rápida. Hacemos hincapié en que no estamos por la presente culpando a Orraca en este caso, toda vez que del récord en su condición actual no tenemos medio de conocer lo que realmente ocurrió. Pero asumiendo únicamente a los fines de esta opinión que las alegaciones de la petición sean ciertas, enfáticamente declaramos que es impropio de aquéllos que serán llamados a administrar justicia a través de

los procedimientos ordinarios de ley, obtener por violencia lo que creen que legalmente les pertenece, aun cuando finalmente se determine que la posición legal asumida por ellos era correcta. Estamos empeñados en una guerra concebida para sustituir la fuerza bruta por la ley y el orden. La democracia empieza por casa. No debemos disipar esos principios sagrados al dirimir controversias domésticas.

*El auto de certorari será anulado.*